# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.,  )
a Florida corporation  )
 )
              Plaintiff,  )           Case No. 97-2866-CIV-T-17B
 )
    vs.  )
 )
COLUMBIA/HCA HEALTHCARE,  )
CORPORATION, a Delaware corporation  )       Honorable Elizabeth A.
 )       Kovachevich
              Defendant,  )
 )
COLUMBIA/HCA HEALTHCARE  )
CORPORATION, a Delaware corporation  )
 )
              Counterplaintiff,  )
 )
    vs.  )
 )
FLORIDA SOFTWARE SYSTEMS, INC.,  )
a Florida corporation,  )
RECEIVABLE DYNAMICS, INC.,  )
a Florida corporation,  )
NEVADA COMMUNICATIONS CORP.,  )
a Delaware corporation, and  )
NORMAN R. DOBIESZ,  )
MAUREEN DONOVAN DOBIESZ,  )
STUART M. LOPATA, and  )
SAMUEL A. GRECO, as individuals,  )
 )
              Counterdefendants/  )
              Third Party Defendants.  )
_____ )

**COUNTERPLAINTIFF, COLUMBIA/HCA HEALTHCARE, CORPORATION'S,
MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM COUNTERDEFENDANTS
FLORIDA SOFTWARE SYSTEMS, INC., RECEIVABLE
DYNAMICS, INC., NEVADA COMMUNICATIONS CORP.,
<u>MAUREEN DONOVAN DOBIESZ, AND STUART LOPATA</u>**

The scope of discovery under Rule 34 of the Federal Rules of Civil Procedure is defined, like

**SCANNED**

120

all other discovery rules, by Rule 26(b).  See Fed. R. Civ. P. 34(a).  Under Rule 26(b), "[p]arties

may obtain discovery regarding any mater, not privileged, which is relevant to the subject matter

involved in the pending action."  See Fed. R. Civ. P. 26(b)(1).  Furthermore, "[t]he information

sought need not be admissible at the trial if the information sought appears reasonably calculated

to lead to the discovery of admissible evidence."  Id.

For the purposes of discovery, relevancy is to be broadly construed.  See Oppenheimer Fund,

Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); Hickman v.

Taylor, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947), Nat'l Service Industries,

Inc. v. Vafla Corp., 694 F.2d 246, 260 (11th Cir. 1982); Roseman Profit Sharing Plan v. Sports

and Recreation, 165 F.R.D. 108, 110 (M.D. Fla. 1996).  A broad interpretation of relevancy

enables parties to use the discovery devices provided by the Federal Rules of Civil Procedure to

obtain the "fullest possible knowledge of the issues and facts before trial."  Hickman, 329 U.S. at

501, 67 S.Ct. at 389.

**A.  The documents requested by Columbia are relevant to the subject matter of the litigation.**

The primary objection of the counterdefendants in responding to the document requests of

Columbia was the relevance of the information requested.  However, under the liberal discovery

standard outlined above, the information requested by Columbia is relevant and discoverable.

The documents requested by Columbia can be classified into three general categories of

information: (1) financial documents of the counterdefendants and third party defendants; (2)

technical data, including FSS' electronic claims processing software and back-up tapes; and  (3)

the personnel files of FSS and RDI.

### 1. Financial Information[1]:

Columbia requested financial documents from FSS and RDI.  (See Request Nos.1(u) and 2(u)).  Financial information, particularly as it relates to damages, is relevant and discoverable.  See  6 Moore's Federal Practice § 26.41[3][d] (Matthew Bender 3d ed.).  In its complaint, FSS alleged damages against Columbia for lost profits in an amount exceeding two billion dollars ($2,000,000,000.00).   As such, FSS's financial information is highly relevant.  See Upchurch v. Ustnet, Inc., 158 F.R.D. 159, 160 (D. Or. 1994) (where damages from interference with contract relationships were alleged, documents showing financial condition relevant and discoverable).  Documents which show the past profitability (or unprofitability) of FSS, records of business expenses, budgets, payroll records, tax returns, and other such financial documents are all relevant to FSS' damages claims.

In addition to the relevance of financial documents on the issue of damages, financial documents are also relevant to the general conspiracy allegations of Columbia.  In its Counterclaim and Third Party Complaint, Columbia alleged that the counterdefendants and third party defendants engaged in a pattern of conspiratorial activity.  This activity was carried out through an extended network of corporations controlled by and/or associated with one or more of the third party defendants.  Financial payments and other transactions between the counterdefendants and the third party defendants solidifies their relationships and supports Columbia's conspiracy allegation.  Furthermore, the disclosures required on tax returns, financial statements and similar documents are reliable sources for a variety of information on the relationships between the counterdefendants and third party plaintiffs.

---

[1]  According to the testimony of FSS' MIS director, FSS back up tapes contain financial information for the company dating back to the pre-1994 time period.

3

Since the tax returns and other financial information requested by Columbia are relevant, the only reasons for withholding production are either confidentiality of privilege. Both FSS and RDI objected, based on confidentiality and privilege, to production of financial documents. (See objections to Request Nos. 1(u) and 2(u)). However, objections based on confidentiality are disingenuous. A comprehensive protective order has been entered which addresses any potential confidentiality concern of the counterdefendants. The Protective Order, entered pursuant to the stipulation of the parties, sets forth a comprehensive scheme for protecting the confidentiality of confidential information. The objections based upon confidentiality should be overruled.

Finally, neither tax returns nor financial information are protected by a privilege from discovery. It is well settled that tax returns are not privileged from discovery and can be discovered when the other requirements for discovery under the rules are met. See generally, 35A C.J.S. Federal Civil Procedure § 728 (1960); Wright, Miller & Marcus, Fed. Practice & Procedure: Civil 2d § 2019 (1994); see e.g., Wiesenberger v. W.E. Hutton & Co., 35 F.R.D. 556, 557 (S.D.N.Y. 1964); Terwilliger v. York Int'l Corp., 176 F.R.D. 214, 216 (W.D. Va. 1997). There is no formal privilege protecting tax returns from discovery.[2] See Shearson Lehmon Hutton, Inc. v. Lambros, 135 F.R.D. 195,198 (M.D. Fla. 1990) ("[T]he quasi-privilege for tax returns has not been expressly recognized within this Circuit. Rather, the discoverability of tax returns has turned on relevance."); see also, Weiner v. Bache Halsey Stuart, Inc., 76 F.R.D. 624,

---

[2] Some circuits have developed a two part test for determining whether tax returns are protected from discovery under a quasi-privilege. See, e.g., Eastern Auto Distributors v. Peugot Motors, 96 F.R.D. 147, 148 (E.D. Va. 1982); Shaver v. Yacht Outward Bound, 71 F.R.D. 561, 564 (N.D. Ill. 1976). Neither the 11th Circuit or the Middle District of Florida have, however, adopted the quasi-privilege for tax returns or the two-part test. See Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846 (11th Cir. 1997); Shearson Lehmon Hutton, Inc. v. Lambros, 135 F.R.D. 195, 198 (M.D. Fla. 1990).

627 (S.D. Fla. 1977); In re Cummins, 144 B.R. 426 (W.D. Ark. 1992) (stating that relevance is

the proper standard for determining when tax returns are discoverable); Halperin, 114 F.R.D. at

11 ("Tax returns are subject to discovery as long as they are relevant to the subject matter of the

action.").

There is also no privilege protecting financial information from discovery. See generally, 6

Moore's Federal Practice, §§ 26.50[1], [2] (Matthew Bender 3d ed.) (there is no federal

accountant-client privilege or banker-client privilege); see also, King v. E.F. Hutton & Company,

Inc., 117 F.R.D. 2, 7-8 (D.D.C. 1987) (finding no federal privilege for banker-client); Clayton

Brokerage Co. Inc. of St. Louis v. Clement, 87 F.R.D. 569, 571 (D. Md. 1980) (bank records are

not confidential communications and can be discovered from financial institution); Delozier v.

First Nat'l Bank of Gatlinburg, 109 F.R.D. 161, 163 (E.D. Tenn. 1986) (there is no federal

banker-depositor privilege); Sneirson v. Chemical Bank, 108 F.R.D. 159, 161-62 (D. Del. 1985)

(financial records are not privileged under federal law); Rosenblatt v. Northwest Airlines, Inc.,

54 F.R.D. 21, 22 (S.D.N.Y. 1971) (stating that there is no banker-client privilege).

Although counterdefendants FSS and RDI originally objected to the production of financial

information, they subsequently agreed, more than a month ago, to produce some financial

documents. However, neither FSS nor RDI has produced any financial information to Columbia

and Columbia does not know whether all of the requested financial information will be produced

or whether FSS and RDI are continuing to object as to certain financial documents.

**2. Personnel Records**:

In its counterclaim, Columbia alleges that FSS and RDI did not have the experience,

expertise, or resources necessary to provide services to Columbia required under the contracts.

See Counterclaim ¶ 11-13. Columbia therefore requested documents concerning FSS and RDI's

5

staff, including personnel files, job applications and resumes of customer support and programming staff. (See Request Nos. 2(qq), (fff) and (ggg)). This information is relevant to the ability of the counterdefendants to perform under their contracts with Columbia. Information in personnel files concerning the performance of employees in their jobs is relevant to Columbia's performance claims against FSS and RDI.[3] Moreover, employee-related information is relevant and discoverable because it contains information on the "identity and location of persons having knowledge of any discoverable matter." See Fed. R. Civ. P. 26(b)(1). The counterdefendants, nevertheless, have refused to produce the requested documents.

**3. Computer Software and Backup Tapes**:

Both the Complaint of FSS and Columbia's Counterclaim directly put at issue FSS's performance of its electronic claims processing contract with Columbia. To perform electronic claims processing services for Columbia, FSS used software which FSS asserts it created, to edit and transmit Columbia's claims. This case involves the performance of FSS's DOS based and Windows based electronic claims processing software systems.

Many of the problems with the quality of FSS's performance under the contract appear to be attributable to defects in the FSS software. Columbia has requested the source code for that software so that it can be reviewed and analyzed by an expert to determine whether the software contains programming errors that caused any or all of the problems with FSS's performance. (See Request No. 2(pp)). FSS has refused to produce its source code, claiming that it is

---

[3] Counsel for FSS and RDI have agreed to produce resumes for customer support and programming staff but continue to refuse to produce other personnel information. Columbia, however, needs the information in personnel files are important because these files likely contain notes and other indicia of the employee's acutal performance. Resumes are not sufficient because, while they do show an employee's experience and education, it does not show actual performance.

confidential. (See August 31, 1999 letter from counsel of FSS attached as Exhibit Q). This Court however, has entered a Comprehensive Protective Order which protects the confidentiality of such information. The parties stipulated to entry of this Order and agreed that the Order was necessary so that the parties would not get into disputes over discovery due to confidentiality concerns. Nevertheless, FSS is using a claim of confidentiality to now stonewall Columbia on discovery of some of the most important information in this case.

Columbia also has requested FSS's back up tapes of its code and data files. According to Richard Croy, the Director of MIS for FSS, these tapes include:

> Any documents that any person creates and stores on that server. All incoming transmissions from facilities, all routing files and EDI transactions that are sent to the intermediaries. All confirmations that are received back from any of those intermediaries. Our {FSS} audit Sequel database, which is the internal controls that keep all summary data and other transactions from facilities to the intermediaries. All of our {FSS} development software. All of our {FSS} source codes. All of our {FSS} accounting information. Basically everything that we {FSS} utilized and backed up from that server. (Croy Deposition p. 92, ℓ3 - ℓ14 attached as Exhibit O hereto.)

The backups were made daily and FSS retains monthly backup tapes going back from the present date to before 1994 (Croy Deposition pp. 28-29, 33-34, 101-102). All of these are relevant to this dispute because the information contained on the tapes goes to the heart of FSS's performance with its claim processing contract with Columbia. FSS has been performing services for Columbia with its software since at least 1992 and has made many different versions of the software (Croy Deposition pp. 15-16). All of these different versions of the software were used at various times for FSS's performance under its contract with Columbia. Accordingly, all of those versions are relevant to this lawsuit.

FSS asserts that the back up tapes include information concerning other FSS customers and

that this is a basis for refusing to produce the backup tapes.  Yet the MIS director of FSS testified that "most" data on the server which is backed up relates to Columbia (Croy Deposition p. 94). FSS was processing, or attempting to process claims for hundreds of Columbia medical facilities. Until 1995, FSS did not provide services for any non-Columbia facilities and then from 1995-1998, serviced only 25 non-Columbia facilities (Croy Deposition pp. 36-37).  The existence of data concerning a relatively small number of non-Columbia customers on the backup tapes is not a sufficient excuse for refusing to produce the Columbia portions of those tapes.

The backup tapes also contain archived information such as word processing document files. (Croy Deposition p. 35). This back up information is relevant to the dispute, because over ninety percent of the business of FSS was for Columbia and any such back up information would necessarily contain information concerning FSS' performance of its contract with Columbia.

Columbia requests that this Court order that FSS immediately produce the source code and back up tapes to Columbia.

### C.  Existence of Donovan Documents.

In response to each request for production, Donovan responded that no documents responsive to the request existed.  Columbia disputes this assertion as unreasonable and implausible, particularly as it relates to particular document requests.  For example, in Request No. 37 to Donovan, Columbia seeks production of financial information, including "tax returns, bank account records, balance sheets, general ledgers and other accounting records."  Donovan cannot assert, in good faith, that she has no tax returns (either individual or joint) or bank account records for any part of the past ten years.

In addition, Donovan was an officer of several of the corporations used by the third party defendants in the conspiracy.  See Exhibit P, Corporate registration information from the Florida

8

Department of State.  Namely, Donovan, also known as M. Dobiesz, was an officer of the following companies:

- RDI
- FSS
- Nevada Communications Corp.
- NCC, Inc.
- P.I.C.S. Corp.
- PICS Technologies
- Prime Net Consulting
- Home Health Plan
- Medtel Services

In its requests, Columbia sought production of "all documents referring or relating to . . . or furnished to you by" each of the corporations listed above.  As an officer of each corporation, Donovan cannot have "no documents" relating to these companies.  At a minimum, Donovan should have documents relating to her duties and activities in management as an officer.

**D.  Non-production from Lopata.**

Lopata has utterly failed to fulfill his discovery obligations in this case.  Over five (5) months after receiving Columbia's request for production of documents and four (4) months after responding to the request, Lopata has still not produced a single document.  On several occasions, Columbia has inquired into the production status of Lopata's documents, and on each occasion Columbia was told that the documents were being compiled and would be forthcoming.  However, Columbia has not been given any documents from Lopata.

The Court should order Lopata to immediately produce all responsive documents.

**E.  The Counterdefendants must identify the party producing the documents.**

Counterdefendants' failure to identify which party produced which documents has frustrated Columbia's discovery efforts.  Counsel for counterdefendants asserts that the documents produced to Columbia were produced on behalf of all the counterdefendants, with the exception

9

of Mr. Stuart Lopata.  However, counterdefendants cannot, in good faith and in compliance with the discovery rules, refuse to identify the producing party.

Rule 34 enables a party to obtain "documents which are in the possession, custody or control *of the party upon whom the request is served*."  <u>See</u> Fed. R. Civ. P. 34(a) (emphasis added). Similarly, Rule 34 requires the "*party upon whom the request is served*" to respond to the request.  <u>See</u> Fed. R. Civ. P. 34(b) (emphasis added).  Rule 34 also requires a party upon whom a request is served to produce the documents requested as they are kept in the ordinary course of business.  <u>See</u> Fed. R. Civ. P. 34(b).

The language of Rule 34 outlined above evidences a one-to-one relationship between the party serving the request and the party responding to the request.  If *each party upon whom a request is served* must respond to the request, it follows that *each party upon whom a request is served* must also produce documents in a manner that allows the person requesting the documents, and the court, to determine if the request has been complied with.  Columbia cannot determine if the counterdefendants, individually, have complied with the requests propounded unless and until they identify the particular documents produced by each party. The Court should order the counterdefendants to identify by bates under which documents were produced by which party.

10

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court grant its motion to compel and order the counterdefendants to provide all of the documents requested by Columbia. Furthermore, Columbia seeks an award for its attorneys fees incurred in bringing this motion.

Dated: September 4, 1999

Respectfully submitted,

G. Donovan Conwell, Jr.
Florida Bar No. 371319
Guillermo A. Pernas, Jr.
Florida Bar No. 0000574
FOWLER, WHITE, GILLEN, BOGGS,
   VILLAREAL AND BANKER, P.A.
P.O. Box 1438
Tampa, Florida 33601
Phone:  (813) 228-7411
Fax: (813) 2298313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Phone: (312) 876-7700
Fax: (312) 993-9767
Trial counsel for defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via United States mail this _4th_ day of September, 1999 upon:

John N. Blair
Blair & Roach
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Counsel for Florida Software Systems,
Receivable Dynamics, Inc.
Nevada Communications Corporation,
Norman R. Dobiesz, Maureen Donovan Dobiesz and
Stuart M. Lopata

Marion Hale
Johnson, Blakely, Pope,
   Bokor, Ruppel & Burns, P.A.
911 Chestnut Street, P.O. Box 1368
Clearwater, FL 33756
(813) 461-1818
Counsel for Florida Software Systems,
Receivable Dynamics, Inc.
Nevada Communications Corporation,
Norman R. Dobiesz, Maureen Donovan Dobiesz and
Stuart M. Lopata

Gary R. Trombley
Florida Bar No. 165721
Tampa Theatre Building, 10th Floor
707 N. Franklin Street
Tampa, FL 33601
(813) 229-7918
Counsel for Samuel A. Greco

_____
Attorney

12

# Exhibit A

**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| FLORIDA SOFTWARE SYSTEMS, INC., a Florida corporation | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| COLUMBIA/HCA HEALTHCARE CORPORATION, a Delaware corporation | ) ) ) ) |
| Defendant, | ) Case No. 97-2866-CIV-T-17B |
| COLUMBIA/HCA | ) ) |
| Counterplaintiff, | ) ) |
| vs. | ) ) |
| FLORIDA SOFTWARE SYSTEMS, INC., a Florida corporation, RECEIVABLE DYNAMICS INC., a Florida corporation, NEVADA COMMUNICATIONS CORPORATION, a Delaware corporation, and NORMAN R. DOBIESZ, MAUREEN DONOVAN DOBIESZ, STUART M. LOPATA and SAMUEL A. GRECO, as individuals | ) ) ) ) ) ) ) ) ) ) ) ) |
| Counterdefendants. | ) ) |

**COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST SET OF**
**DOCUMENT REQUESTS UPON FLORIDA SOFTWARE SYSTEMS, INC.**

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Plaintiff-Counterdefendant Florida Software Systems, Inc. ("FSS") produce the documents

requested herein for inspection and copying within 30 days of the service hereof at the offices of

Fowler, White, Gillen, Boggs, Villareal and Banker, P.A. 501 E. Kennedy Blvd. Suite 1200.

Tampa, FL 33601, or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

      A.     As used herein, the term "FSS" shall mean Florida Software Systems, Inc ,

its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

      B.     As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its

attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

      C.     As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its

attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

      D.     As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare

Corporation.

      E.     As used herein, the terms "you" and "your" shall mean FSS.

      F.     The word "document(s)" shall mean any and all written, printed,

typewritten, photographic, recorded or graphic materials, however produced or reproduced,

which relate or pertain in any way to the subject matter to which the interrogatories refer, such

document(s) to include, without limitation, all originals, copies and drafts of all notes,

memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

G.     The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa.  The present tense shall be read to include the past tense, and vice versa.

H.     As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

I.     As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

J.     The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone,

3

teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

K.    The words "and" "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

L.    For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of your assertion or such privilege or protection; and (c) identify the allegedly applicable privilege or protection.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents referring or relating to RDI including, but not limited to:

a.    the formation and incorporation of RDI and its qualification to do business in any jurisdiction outside of its state of incorporation;

b.    its corporate minutes, by-laws and articles of incorporation;

c.    all documents sufficient to identify its officers, directors and managerial-level employees, their duties and responsibilities and their respective dates of service;

d.    all filings with the state of Florida or any other state or federal government agency;

e.    all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations;

4

f.      all contracts, agreements, understandings or authorizations, whether formal or informal, with any governmental or private insurer or third party payor;

g.      all communications between RDI and any governmental or private insurer or third party payor concerning any claims made by or against Columbia;

h.      all licenses or other agreements regarding RDI's use of or distribution of any software or any computer program of any kind relating to electronic billing, claims processing services, or data base management;

i.      all customer or client lists, contracts, or any other documents identifying any clients or customers of RDI, other than Columbia, for whom RDI has performed any electronic billing or claims processing services;

j.      all contracts, agreements, or understandings, whether formal or informal, between RDI and any third-party to perform any electronic billing or claims processing services for RDI or clients or customers of RDI;

k.      all contracts, agreements, or understandings, whether formal or informal, drafts or final versions, between RDI and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

l.      all checks, wire transfers or other documents relating to any payments to RDI from Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

m.      all invoices from RDI to Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

n.      all correspondence or other communications between RDI and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

o.      all correspondence or other communications between RDI and FSS relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

p.      **all correspondence or other communications between RDI and any third party relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;**

q.      **all correspondence or other communications between RDI and Samuel A. Greco;**

5

r.    all correspondence or other communications between Samuel A Greco and any person at any time who is or may have been at any time employed by RDI, or is or may have been at any time an agent of RDI;

s.    all correspondence or other communications between RDI and any third party referencing or relating to Samuel A. Greco;

t.    all documents relating to RDI's performance of or problems with service for Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia, including, but not limited to installation of hardware or software, training of facility personnel, transmission of claims, and creation of billing edits;

u.    all financial records of any kind, including but not limited to all RDI financial statements, income statements, statements of cash flow, tax returns, accounts payable and receivable, accounting records, balance sheets, general ledgers and bank account records from the past ten (10) years;

v.    all documents relating to the ownership of RDI or transfer of that ownership at any time, including but not limited to any stock ledgers and stock certificates;

w.    all documents concerning any lawsuit or formal or informal investigation, either pending or closed, in which RDI is or was a defendant or target of investigation and in which there was any claim or allegation concerning electronic billing or claims processing;

x.    all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including but not limited to any contract with Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia; and

y.    all documents showing the qualifications and experience of RDI in electronic claims processing and claims management as of July, 1991.

## REQUEST NO. 2

All documents referring or relating to FSS, including but not limited to:

a.    the formation and incorporation of FSS and its qualification to do business in any jurisdiction outside of its state of incorporation;

b.    its corporate minutes, by-laws and articles of incorporation;

6

c. all documents sufficient to identify its officers, directors and managerial-level employees, their duties and responsibilities and their respective dates of service;

d all filings with the state of Florida or any other state or federal government agency;

e. all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations;

f. all agreements, contracts, understandings, or authorizations, whether formal or informal, with any governmental or private insurer or third party payor;

g. all communications between FSS and any governmental or private insurer or third party payor concerning any claims made by or against Columbia;

h. all licenses or other agreements regarding FSS' use or distribution of any software or any computer program of any kind relating to electronic billing, claims processing services, or data base management;

i. all agreements, contracts, or understandings, whether formal or informal, between FSS and any third-party to perform any electronic billing or claims processing services for FSS or clients and customers of FSS;

j. all customer or client lists, contracts, or any other document identifying any clients or customers, other than Columbia, for whom FSS performed any electronic billing or claims processing services;

k. all agreements, contracts, or understandings, whether formal or informal, draft or final versions, between FSS and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

l. all checks, wire transfers or other documents relating to any payments to FSS from Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

m. all invoices from FSS to Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

n. all correspondence or other communications between FSS and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

o. all correspondence or other communications between FSS and any third party relating to or referencing Columbia or any hospital or other medical

7

facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

p.      all correspondence or other communications between FSS and Samuel A. Greco;

q.      all correspondence or other communications between Samuel A. Greco and any person at any time who is or may have been at any time employed by FSS, or is or may have been at any time an agent of FSS,

r.      all correspondence or other communications between FSS and any third party referencing or relating to Samuel A. Greco;

s.      all documents referring or relating to FSS' allegations of damages in its Amended Complaint filed against Columbia;

t.      all documents referring or relating to the ownership of FSS at any time, including but not limited to any transfer of that ownership;

u.      all financial records of any kind including, but not limited to, all FSS financial statements, income statements, statements of cash flow, tax returns, accounts payable and receivable, accounting records, balance sheets, general ledgers and bank account records from the past ten (10) years;

v.      all documents referring or relating to FSS's performance of or problems with service for Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia, including, but not limited to installation of hardware or software, training of facility personnel, transmission of claims, and creation of billing edits;

w.      all documents referring or relating to any lawsuit or formal or informal investigation, both pending or closed in which FSS is or was a defendant or target of investigation and in which there was any claim or allegation concerning electronic billing or claims processing;

x.      all documents referring or relating to enrollment, testing and approval to send claims electronically from every payer that electronic claims were sent to for Columbia;

y.      all documents referring or relating to edit criteria obtained from each payer that claims were sent to;

z.      all documents referring or relating to communications with payers concerning Columbia claims;

8

aa.  all documents referring or relating to receipt of edit requests from Columbia, research and approval of such requests, programming, testing, and documentation of edit implementation and final client notification;

bb.  all documents referring or relating to software and edit testing and approval procedures;

cc.  all documents referring or relating to daily claims transmission procedures and balancing procedures including check totals, claim counts, turnaround times (claim receipt to transmission controls), etc.;

dd.  all documents referring or relating to procedures, including audit trails, to insure that claims were transmitted with data unaltered, exactly as received;

ee.  one week's worth of documents, backup tapes, logs, etc. evidencing, referring or relating to the daily routine application of procedures documented in (bb)-(dd) above applied to each of Columbia's facilities;

ff.  for every payer to whom FSS sent Columbia claims, produce documentation sufficient to identify what percent of each payer's claims were transmitted electronically, and the percent of each payer's claims that were transmitted on paper;

gg.  all documents referring or relating to the availability of FSS system and network resources;

hh.  all documents referring or relating to policies regarding the qualification and hiring of personnel for training and/or customer support positions;

ii.  all documents referring or relating to customer support training programs, including but not limited to "train the trainer" programs, all related training material, records of personnel trained, and evaluation of personnel capabilities after training;

jj.  all documents referring or relating to support calls, including but not limited to daily and monthly volume in total and by individual hospital, average length of support calls, and how many were resolved during the call vs. logged (a problem report) for further action;

kk.  all documents referring or relating to support call monitoring, procedures, personnel evaluation procedures, and customer satisfaction monitoring;

ll.  all documents referring or relating to problem reports, including but not limited to identity of hospital, date/time reported, nature (e.g., software, edit, etc.) and criticality (e.g., work around available, dead in the water, etc.) of the problem, action taken and date/time of final resolution;

mm.   all documents referring or relating to Customer Support staffing models and how monitored;

nn.   all documents referring or relating to client training programs, including but not limited to copies of training manuals, software user manuals, and any other training related material used in connection with client training;

oo.   all documents referring or relating to the sale and marketing of products or services by FSS;

pp.   all software in electronic and human readable form used by FSS to provide services to Columbia;

qq.   the personnel files for all current and former employees of FSS who performed any services for or related to Columbia;

rr.   all documents referring or relating to the use of the software by FSS to provide services for Columbia;

ss.   all documents referring or relating to the use of technical procedures by FSS to provide services for Columbia;

tt.   all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including but not limited to any contract with Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

uu.   all documents showing the qualifications and experience of FSS in electronic claims processing and claims management as of October, 1995;

vv.   all documents regarding the development of the Windows version of the FSS software used in providing services for Columbia;

ww.   all licenses granted to FSS for software used by FSS in providing services for Columbia;

xx.   all documents showing the prevalent prices in the industry for electronic claims processing of medical related claims in 1995 and 1996;

yy.   all logs of problems with software use by FSS in providing services to Columbia;

zz.   all documents which you contend support any of your defenses to Columbia's counterclaim or third party complaint;

aaa.    all documents which you contend support your claim that Columbia breached a contract with FSS;

bbb.    the invoices and proof of payment by FSS to third party vendors for all hardware furnished by FSS to Columbia;

ccc.    FSS's complete file for each of the Columbia facilities at which FSS installed software;

ddd.    all documents showing the disposition of funds paid to FSS by Columbia as payment in settlement of disputes between FSS and Columbia;

eee.    all documents which FSS contends explain the nature and cause of the problems complained of in Columbia's termination letter dated May 4, 1998;

fff.    the resumes and job applications for every person acting on behalf of FSS who provided customer support for Columbia;

ggg.    all job applications and resumes for all persons who provided computer programming for FSS in connection with software used for Columbia;

hhh.    the contracts between FSS and American Airlines or any other entity regarding training to be provided to Columbia; and

iii.    all documents identifying the qualifications and experience of FSS in providing claims management and claim processing services for each of the third party payors to whom FSS submitted claims on behalf of Columbia.

## REQUEST NO. 3

All documents referring or relating to Norman Dobiesz, including but not limited

to:

a.    ownership of either RDI or FSS;

b.    capital contributions to either RDI or FSS;

c.    positions as either an officer or employee of either RDI or FSS;

d.    performance of any activities for or on behalf of either RDI or FSS;

e.    receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

f.    any communications either to or from that individual.

**REQUEST NO. 4**

All documents referring or relating to Maureen Donovan Dobiesz, or furnished to you by Maureen Donovan Dobiesz, including but not limited to:

a.  ownership of either RDI or FSS;

b.  capital contributions to either RDI or FSS;

c.  positions as either an officer or employee of either RDI or FSS;

d.  performance of any activities for or on behalf of either RDI or FSS;

e.  receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

f.  any communications either to or from that individual.

**REQUEST NO. 5**

All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including but not limited to:

a.  ownership of either RDI or FSS;

b.  capital contributions to either RDI or FSS;

c.  positions as either an officer or employee of either RDI or FSS;

d.  performance of any activities for or on behalf of either RDI or FSS;

e.  receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

f.  any communications either to or from that individual.

**REQUEST NO. 6**

All documents referring or relating to Eric Julian, or furnished to you by Eric Julian, including but not limited to:

a.  ownership of either RDI or FSS;

b.  capital contributions to either RDI or FSS;

12

    c.      positions as either an officer or employee of either RDI or FSS;

    d.      performance of any activities for or on behalf of either RDI or FSS;

    e.      receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

    f.      any communications either to or from that individual.

## REQUEST NO. 7

All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including but not limited to:

    a.      any communications either to or from that individual; and

    b.      that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS.

## REQUEST NO. 8

All documents referring or relating to PICS, the Patient Information Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including but not limited to:

    a.      all contracts or agreements, whether drafts, proposed or executed;

    b.      all communications either to or from Columbia or any third party;

    c.      all invoices, purchase orders, checks or other records concerning any payments to FSS;

    d.      all bills of lading, delivery tickets or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS;

    e      all invoices, purchase orders, checks or other records concerning any purchases by FSS;

    f.      all documents concerning the performance of any activities by FSS;

    g.      all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS;

h.   all documents concerning any assets or liabilities of PICS; and

i.   all documents furnished to you by PICS.

## REQUEST NO. 9

All documents referring or relating to Sophisticated Software, Inc., or furnished to you by Sophisticated Software, Inc

## REQUEST NO. 10

All documents referring or relating to PrimeNet Consulting, Inc., or furnished to you by PrimeNet Consulting, Inc.

## REQUEST NO. 11

All documents referring or relating to PrimeNet Financial Corporation, or furnished to you PrimeNet Financial Corporation.

## REQUEST NO. 12

All documents referring or relating to any corporation, partnership, joint venture or other entity whose name or identity incorporates the words "PrimeNet" or "Prime Net."

## REQUEST NO. 13

All documents referring or relating to Financial Trac-Systems, Inc., or furnished to you Financial Trac-Systems, Inc.

## REQUEST NO. 14

All documents referring or relating to PICS Technologies, Inc., or furnished to you by PICS Technologies, Inc.

## REQUEST NO. 15

All documents referring or relating to Home Health Plan, Inc., or furnished to you by Home Health Plan, Inc.

14

**REQUEST NO. 16**

All documents referring or relating to FSS Development Corp., or furnished to you by FSS Development Corp.

**REQUEST NO. 17**

All documents referring or relating to International Development Corp., or furnished to you by International Development Corp.

**REQUEST NO. 18**

All documents referring or relating to Innovative Marketing & Advertising, Inc., or furnished to you by Innovative Marketing & Advertising, Inc.

**REQUEST NO. 19**

All documents referring or relating to IHI Associates, Inc., or furnished to you by IHI Associates, Inc.

**REQUEST NO. 20**

All documents referring or relating to Nevada Communications Corporation, a Florida corporation, or furnished to you by Nevada Communications Corporation, a Florida corporation.

**REQUEST NO. 21**

All documents referring or relating to Nevada Communications Corporation, a Delaware corporation, or furnished to you by Nevada Communications Corporation, a Delaware corporation.

**REQUEST NO. 22**

All documents referring or relating to ComCentral Corporation, or furnished to you by ComCentral Corporation.

15

**REQUEST NO. 23**

All documents referring or relating to KL Communications Corp., or furnished to you by KL Communications Corp.

**REQUEST NO. 24**

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia.

**REQUEST NO. 25**

All documents referring or relating to the Columbia Telecommunications Network, or furnished to you by Columbia Telecommunications Network.

**REQUEST NO. 26**

All documents referring or relating to Visioncomm, Inc., or furnished to you by Visioncomm, Inc

**REQUEST NO. 27**

All documents referring or relating to Pay Phones of America, Inc., or furnished to you by Pay Phones of America, Inc.

**REQUEST NO. 28**

All documents referring or relating to Teltronics, Inc., or furnished to you by Teltronics, Inc.

**REQUEST NO. 29**

All documents referring or relating to Michael Zambouros, or furnished to you by Michael Zambouros.

**REQUEST NO. 30**

All documents referring or relating to Medical Cash Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 31**

All documents referring or relating to Medical Funding Corp., or furnished to you by Medical Funding Corp.

**REQUEST NO. 32**

All documents referring or relating to Medical Prefunding Inc., or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 33**

All documents referring or relating to Advantage Medical Inc., or furnished to you Advantage Medical Inc.

**REQUEST NO. 34**

All documents referring or relating to David McDivitt, including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 35**

All documents referring or relating to John Wood, including but not limited to any contracts agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 36**

All documents referring or relating to MedTel Services, Inc., or furnished to you by MedTel Services, Inc.

**REQUEST NO. 37**

All documents referring or relating to Miranda Design Associates, Inc., or furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 38**

All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either Norman Dobiesz, Maureen Donovan Dobiesz, Stuart Lopata, Samuel A. Greco or Eric Julian.

Dated:  March ___ 1999

Respectfully submitted,

_____

One of the Attorneys for Defendant,
Columbia/HCA Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida  33601
Phone: 813/228-7411
Fax: 813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606
Phone: 312/876-7700
Fax: 312/993-9767

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Florida Software Systems, Inc  to be served this ___-day of

March, 1999 upon

John N. Blair
Blair & Roach
2645 Sheridan Drive
Tonawanda, NY  14150
(716) 834-9181
Counsel for Florida Software Systems,
Receivable Dynamics, Inc.,
Nevada Communications Corporation,
Norman R. Dobiesz, Maureen Donovan Dobiesz
and Stuart M. Lopata
(By Mail)

Marion Hale
Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
911 Chestnut Street, P.O. Box 1368
Clearwater, FL  33756
(813) 461-1818
Counsel for Florida Software Systems,
Receivable Dynamics, Inc.,
Nevada Communications Corporation,
Norman R. Dobiesz, Maureen Donovan Dobiesz
and Stuart M. Lopata
(By Hand Delivery)

Gary R. Trombley
Florida Bar No. 165721
Tampa Theatre Building, 10th Floor
707 N. Franklin Street
Tampa, FL  33601
(813) 229-7918
Counsel for Samuel A. Greco
(By Hand Delivery)

CH_DOCS\143476 3

# Exhibit
# B

## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.,  )
a Florida corporation            )
                                 )
              Plaintiff,          )
                                 )
       vs.                        )
                                 )
COLUMBIA/HCA                      )
HEALTHCARE CORPORATION,           )
a Delaware corporation            )
                                 )
              Defendant,          ) Case No. 97-2866-CIV-T-17B
                                 )
COLUMBIA/HCA                      )
              Counterplaintiff,   )
                                 )
       vs.                        )
                                 )
FLORIDA SOFTWARE SYSTEMS, INC.,   )
a Florida corporation,            )
RECEIVABLE DYNAMICS INC.,         )
a Florida corporation,            )
NEVADA COMMUNICATIONS             )
CORPORATION,                      )
a Delaware corporation,           )
and NORMAN R. DOBIESZ,            )
MAUREEN DONOVAN DOBIESZ,          )
STUART M. LOPATA and              )
SAMUEL A. GRECO, as individuals   )
                                 )
              Counterdefendants.  )

## COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST SET OF
## DOCUMENT REQUESTS UPON RECEIVABLE DYNAMICS INC.

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Counterdefendant Receivable Dynamics Inc. ("RDI") produce the documents requested herein for

inspection and copying within 30 days of the service hereof at the offices of Fowler, White,

Gillen, Boggs, Villareal and Banker, P.A. 501 E. Kennedy Blvd. Suite 1200. Tampa, FL 33601,

or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

A.    As used herein, the term "FSS" shall mean Florida Software Systems, Inc.,

its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

B.    As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its

attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

C.    As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its

attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

D.    As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare

Corporation.

E.    As used herein, the terms "you" and "your" shall mean RDI.

F.    The word "document(s)" shall mean any and all written, printed,

typewritten, photographic, recorded or graphic materials, however produced or reproduced,

which relate or pertain in any way to the subject matter to which the interrogatories refer, such

document(s) to include, without limitation, all originals, copies and drafts of all notes,

2

memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

   G.  The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa. The present tense shall be read to include the past tense, and vice versa.

   H.  As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

   I.  As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

   J.  The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone,

teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

   K. The words "and" "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

   L. For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of your assertion or such privilege or protection; and (c) identify the allegedly applicable privilege or protection.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

   All documents referring or relating to RDI including, but not limited to:

  a. the formation and incorporation of RDI and its qualification to do business in any jurisdiction outside of its state of incorporation;

  b. its corporate minutes, by-laws and articles of incorporation;

  c. all documents sufficient to identify its officers, directors and managerial-level employees, their duties and responsibilities and their respective dates of service;

  d. all filings with the state of Florida or any other state or federal government agency;

  e. all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations;

f. all contracts, agreements, understandings or authorizations, whether formal or informal, with any governmental or private insurer or third party payor;

g. all communications between RDI and any governmental or private insurer or third party payor concerning any claims made by or against Columbia;

h. all licenses or other agreements regarding RDI's use of or distribution of any software or any computer program of any kind relating to electronic billing, claims processing services, or data base management;

i. all customer or client lists, contracts, or any other documents identifying any clients or customers of RDI, other than Columbia, for whom RDI has performed any electronic billing or claims processing services;

j. all contracts, agreements, or understandings, whether formal or informal, between RDI and any third-party to perform any electronic billing or claims processing services for RDI or clients or customers of RDI;

k. all contracts, agreements, or understandings, whether formal or informal, drafts or final versions, between RDI and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

l. all checks, wire transfers or other documents relating to any payments to RDI from Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

m. all invoices from RDI to Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

n. all correspondence or other communications between RDI and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

o. all correspondence or other communications between RDI and FSS relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

p. all correspondence or other communications between RDI and any third party relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

q. all correspondence or other communications between RDI and Samuel A. Greco;

r all correspondence or other communications between Samuel A. Greco and any person at any time who is or may have been at any time employed by RDI, or is or may have been at any time an agent of RDI;

s. all correspondence or other communications between RDI and any third party referencing or relating to Samuel A. Greco;

t. all documents relating to RDI's performance of or problems with service for Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia, including, but not limited to installation of hardware or software, training of facility personnel, transmission of claims, and creation of billing edits;

u. all financial records of any kind, including but not limited to all RDI financial statements, income statements, statements of cash flow, tax returns, accounts payable and receivable, accounting records, balance sheets, general ledgers and bank account records from the past ten (10) years;

v. all documents relating to the ownership of RDI or transfer of that ownership at any time, including but not limited to any stock ledgers and stock certificates;

w. all documents concerning any lawsuit or formal or informal investigation, either pending or closed, in which RDI is or was a defendant or target of investigation and in which there was any claim or allegation concerning electronic billing or claims processing;

x. all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including but not limited to any contract with Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia; and

y. all documents showing the qualifications and experience of RDI in electronic claims processing and claims management as of July, 1991.

## REQUEST NO. 2

All documents referring or relating to FSS, including but not limited to:

a. the formation and incorporation of FSS and its qualification to do business in any jurisdiction outside of its state of incorporation;

b. its corporate minutes, by-laws and articles of incorporation;

c. all documents sufficient to identify its officers, directors and managerial-level employees, their duties and responsibilities and their respective dates of service;

d. all filings with the state of Florida or any other state or federal government agency;

e. all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations;

f. all agreements, contracts, understandings, or authorizations, whether formal or informal, with any governmental or private insurer or third party payor;

g. all communications between FSS and any governmental or private insurer or third party payor concerning any claims made by or against Columbia;

h. all licenses or other agreements regarding FSS' use or distribution of any software or any computer program of any kind relating to electronic billing, claims processing services, or data base management;

i. all agreements, contracts, or understandings, whether formal or informal, between FSS and any third-party to perform any electronic billing or claims processing services for FSS or clients and customers of FSS;

j. all customer or client lists, contracts, or any other document identifying any clients or customers, other than Columbia, for whom FSS performed any electronic billing or claims processing services;

k. all agreements, contracts, or understandings, whether formal or informal, draft or final versions, between FSS and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

l. all checks, wire transfers or other documents relating to any payments to FSS from Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

m. all invoices from FSS to Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

n. all correspondence or other communications between FSS and Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

o. all correspondence or other communications between FSS and any third party relating to or referencing Columbia or any hospital or other medical

facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

p.   all correspondence or other communications between FSS and Samuel A. Greco;

q.   all correspondence or other communications between Samuel A. Greco and any person at any time who is or may have been at any time employed by FSS, or is or may have been at any time an agent of FSS;

r.   all correspondence or other communications between FSS and any third party referencing or relating to Samuel A. Greco,

s.   all documents referring or relating to FSS' allegations of damages in its Amended Complaint filed against Columbia;

t.   all documents referring or relating to the ownership of FSS at any time, including but not limited to any transfer of that ownership;

u.   all financial records of any kind including, but not limited to, all FSS financial statements, income statements, statements of cash flow, tax returns, accounts payable and receivable, accounting records, balance sheets, general ledgers and bank account records from the past ten (10) years;

v.   all documents referring or relating to FSS's performance of or problems with service for Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia, including, but not limited to installation of hardware or software, training of facility personnel, transmission of claims, and creation of billing edits;

w.   all documents referring or relating to any lawsuit or formal or informal investigation, both pending or closed in which FSS is or was a defendant or target of investigation and in which there was any claim or allegation concerning electronic billing or claims processing;

x.   all documents referring or relating to enrollment, testing and approval to send claims electronically from every payer that electronic claims were sent to for Columbia;

y.   all documents referring or relating to edit criteria obtained from each payer that claims were sent to;

z.   all documents referring or relating to communications with payers concerning Columbia claims;

aa      all documents referring or relating to receipt of edit requests from
        Columbia, research and approval of such requests, programming, testing,
        and documentation of edit implementation and final client notification.

bb.     all documents referring or relating to software and edit testing and
        approval procedures;

cc.     all documents referring or relating to daily claims transmission procedures
        and balancing procedures including check totals, claim counts, turnaround
        times (claim receipt to transmission controls), etc.;

dd.     all documents referring or relating to procedures, including audit trails, to
        insure that claims were transmitted with data unaltered, exactly as received.

ee.     one week's worth of documents, backup tapes, logs, etc. evidencing,
        referring or relating to the daily routine application of procedures
        documented in (bb)-(dd) above applied to each of Columbia's facilities;

ff.     for every payer to whom FSS sent Columbia claims, produce
        documentation sufficient to identify what percent of each payer's claims
        were transmitted electronically, and the percent of each payer's claims that
        were transmitted on paper;

gg.     all documents referring or relating to the availability of FSS system and
        network resources;

hh.     all documents referring or relating to policies regarding the qualification
        and hiring of personnel for training and/or customer support positions;

ii.     all documents referring or relating to customer support training programs,
        including but not limited to "train the trainer" programs, all related training
        material, records of personnel trained, and evaluation of personnel
        capabilities after training;

jj.     all documents referring or relating to support calls, including but not
        limited to daily and monthly volume in total and by individual hospital,
        average length of support calls, and how many were resolved during the
        call vs. logged (a problem report) for further action;

kk.     all documents referring or relating to support call monitoring, procedures,
        personnel evaluation procedures, and customer satisfaction monitoring;

ll.     all documents referring or relating to problem reports, including but not
        limited to identity of hospital, date/time reported, nature (e.g., software,
        edit, etc.) and criticality (e.g., work around available, dead in the water,
        etc.) of the problem, action taken and date/time of final resolution;

mm.   all documents referring or relating to Customer Support staffing models and how monitored;

nn   all documents referring or relating to client training programs, including but not limited to copies of training manuals, software user manuals, and any other training related material used in connection with client training;

oo.   all documents referring or relating to the sale and marketing of products or services by FSS;

pp.   all software in electronic and human readable form used by FSS to provide services to Columbia;

qq.   the personnel files for all current and former employees of FSS who performed any services for or related to Columbia;

rr.   all documents referring or relating to the use of the software by FSS to provide services for Columbia;

ss.   all documents referring or relating to the use of technical procedures by FSS to provide services for Columbia;

tt.   all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including but not limited to any contract with Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia;

uu.   all documents showing the qualifications and experience of FSS in electronic claims processing and claims management as of October, 1995;

vv.   all documents regarding the development of the Windows version of the FSS software used in providing services for Columbia;

ww.   all licenses granted to FSS for software used by FSS in providing services for Columbia;

xx.   all documents showing the prevalent prices in the industry for electronic claims processing of medical related claims in 1995 and 1996;

yy.   all logs of problems with software used by FSS in providing services to Columbia;

zz.   all documents which you contend support any of your defenses to Columbia's counterclaim or third party complaint;

10

aaa.    all documents which you contend support your claim that Columbia breached a contract with FSS;

bbb.    the invoices and proof of payment by FSS to third party vendors for all hardware furnished by FSS to Columbia;

ccc.    FSS's complete file for each of the Columbia facilities at which FSS installed software;

ddd.    all documents showing the disposition of funds paid to FSS by Columbia as payment in settlement of disputes between FSS and Columbia;

eee.    all documents which FSS contends explain the nature and cause of the problems complained of in Columbia's termination letter dated May 4, 1998;

fff.    the resumes and job applications for every person acting on behalf of FSS who provided customer support for Columbia;

ggg.    all job applications and resumes for all persons who provided computer programming for FSS in connection with software used for Columbia;

hhh.    the contracts between FSS and American Airlines or any other entity regarding training to be provided to Columbia; and

iii.    all documents identifying the qualifications and experience of FSS in providing claims management and claim processing services for each of the third party payors to whom FSS submitted claims on behalf of Columbia.

## REQUEST NO. 3

All documents referring or relating to Norman Dobiesz, or furnished to you by

Norman Dobiesz, including but not limited to:

a.    that individual's ownership of either RDI or FSS;

b.    that individual's capital contributions to either RDI or FSS;

c.    that individual's positions as either an officer or employee of either RDI or FSS;

d.    that individual's performance of any activities for or on behalf of either RDI or FSS;

e.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

11

f.      any communications either to or from that individual.

## REQUEST NO. 4

All documents referring or relating to Maureen Donovan Dobiesz, or furnished to

you by Maureen Donovan Dobiesz, including but not limited to:

a.      that individual's ownership of either RDI or FSS;

b.      that individual's capital contributions to either RDI or FSS;

c.      that individual's positions as either an officer or employee of either RDI or
        FSS;

d       that individual's performance of any activities for or on behalf of either
        RDI or FSS,

e.      that individual's receipt of any compensation, gifts, payment or other
        benefit, directly or indirectly, from either RDI or FSS; and

f.      any communications either to or from that individual.

## REQUEST NO. 5

All documents referring or relating to Stuart Lopata, or furnished to you by Stuart

Lopata, including but not limited to:

a.      that individual's ownership of either RDI or FSS;

b.      that individual's capital contributions to either RDI or FSS;

c.      that individual's positions as either an officer or employee of either RDI or
        FSS;

d.      that individual's performance of any activities for or on behalf of either
        RDI or FSS;

e.      that individual's receipt of any compensation, gifts, payment or other
        benefit, directly or indirectly, from either RDI or FSS; and

f.      any communications either to or from that individual.

**REQUEST NO. 6**

All documents referring or relating to Eric Julian, or furnished to you by Eric Julian, including but not limited to:

    a.    that individual's ownership of either RDI or FSS;

    b.    that individual's capital contributions to either RDI or FSS;

    c.    that individual's positions as either an officer or employee of either RDI or FSS;

    d.    that individual's performance of any activities for or on behalf of either RDI or FSS;

    e.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS; and

    f    any communications either to or from that individual.

**REQUEST NO. 7**

All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including but not limited to:

    a.    any communications either to or from that individual; and

    b.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS.

**REQUEST NO. 8**

All documents referring or relating to PICS, the Patient Information Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including but not limited to:

    a.    all contracts or agreements, whether drafts, proposed or executed;

    b.    all communications either to or from Columbia or any third party;

c.   all invoices, purchase orders, checks or other records concerning any payments to FSS;

d.   all bills of lading, delivery tickets or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS;

e.   all invoices, purchase orders, checks or other records concerning any purchases by FSS;

f.   all documents concerning the performance of any activities by FSS;

g.   all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS;

h.   all documents concerning any assets or liabilities of PICS; and

i.   all documents furnished to you by PICS.

**REQUEST NO. 9**

All documents referring or relating to Sophisticated Software, Inc., or furnished to you by Sophisticated Software, Inc.

**REQUEST NO. 10**

All documents referring or relating to PrimeNet Consulting, Inc., or furnished to you by PrimeNet Consulting, Inc.

**REQUEST NO. 11**

All documents referring or relating to PrimeNet Financial Corporation, or furnished to you by PrimeNet Financial Corporation.

**REQUEST NO. 12**

All documents referring or relating to any corporation, partnership, joint venture or other entity whose name or identity incorporates the words "PrimeNet" or "Prime Net."

**REQUEST NO. 13**

All documents referring or relating to Financial Trac-Systems, Inc., or furnished to you by Financial Trac-Systems, Inc.

**REQUEST NO. 14**

All documents referring or relating to PICS Technologies, Inc., or furnished to you by PICS Technologies, Inc.

**REQUEST NO. 15**

All documents referring or relating to Home Health Plan, Inc., or furnished to you by Home Health Plan, Inc.

**REQUEST NO. 16**

All documents referring or relating to FSS Development Corp., or furnished to you by FSS Development Corp.

**REQUEST NO. 17**

All documents referring or relating to International Development Corp., or furnished to you by International Development Corp.

**REQUEST NO. 18**

All documents referring or relating to Innovative Marketing & Advertising, Inc., or furnished to you by Innovative Marketing & Advertising, Inc.

**REQUEST NO. 19**

All documents referring or relating to IHI Associates, Inc., or furnished to you by IHI Associates, Inc.

**REQUEST NO. 20**

All documents referring or relating to Nevada Communications Corporation, a Florida corporation, or furnished to you by Nevada Communications Corporation, a Florida corporation.

**REQUEST NO. 21**

All documents referring or relating to Nevada Communications Corporation, a Delaware corporation, or furnished to you by Nevada Communications Corporation, a Delaware corporation.

**REQUEST NO. 22**

All documents referring or relating to ComCentral Corporation, or furnished to you by ComCentral Corporation.

**REQUEST NO. 23**

All documents referring or relating to KL Communications Corp., or furnished to you by KL Communications Corp.

**REQUEST NO. 24**

All documents referring or relating to Miranda Design Associates, Inc., or furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 25**

All documents referring or relating to MedTel Services, Inc., or furnished to you by MedTel Services, Inc.

**REQUEST NO. 26**

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia.

16

**REQUEST NO. 27**

      All documents referring or relating to the Columbia Telecommunications Network, or furnished to you by Columbia Telecommunications Network.

**REQUEST NO. 28**

      All documents referring or relating to Visioncomm, Inc., or furnished to you by Visioncomm, Inc.

**REQUEST NO. 29**

      All documents referring or relating to Pay Phones of America, Inc., or furnished to you by Pay Phones of America, Inc.

**REQUEST NO. 30**

      All documents referring or relating to Teltronics, Inc., or furnished to you by Teltronics, Inc.

**REQUEST NO. 31**

      All documents referring or relating to Medical Cash Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 32**

      All documents referring or relating to Medical Funding Corp., or furnished to you by Medical Funding Corp.

**REQUEST NO. 33**

      All documents referring or relating to Medical Prefunding Inc., or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 34**

      All documents referring or relating to Advantage Medical Inc., or furnished to you by Advantage Medical Inc.

**REQUEST NO. 35**

      All documents referring or relating to Michael Zambouros, or furnished to you by Michael Zambouros.

**REQUEST NO. 36**

      All documents referring or relating to David McDivitt, including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 37**

      All documents referring or relating to John Wood, including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 38**

      All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either Norman Dobiesz, Maureen Donovan Dobiesz, Stuart Lopata, Samuel A. Greco or Eric Julian.

Dated: March __, 1999

Respectfully submitted,

_____
One of the Attorneys for Defendant,
Columbia/HCA Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida 33601
Phone: 813/228-7411
Fax: 813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Phone: 312/876-7700
Fax: 312/993-9767

19

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Receivable Dynamics Inc. to be served this ⸝⸝ day of

March, 1999 upon.

> John N. Blair
> Blair & Roach
> 2645 Sheridan Drive
> Tonawanda, NY 14150
> (716) 834-9181
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Mail)
>
> Marion Hale
> Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
> 911 Chestnut Street, P.O. Box 1368
> Clearwater, FL 33756
> (813) 461-1818
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Hand Delivery)
>
> Gary R. Trombley
> Florida Bar No. 165721
> Tampa Theatre Building, 10th Floor
> 707 N. Franklin Street
> Tampa, FL 33601
> (813) 229-7918
> Counsel for Samuel A. Greco
> (By Hand Delivery)

CH_DOCS\146530.2

# Exhibit C

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COLUMBIA/HCA<br>HEALTHCARE CORPORATION,<br>a Delaware corporation | ) |
| | ) |
| Defendant, | ) Case No. 97-2866-CIV-T-17B |
| | ) |
| COLUMBIA/HCA | ) |
| Counterplaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation,<br>RECEIVABLE DYNAMICS INC.,<br>a Florida corporation,<br>NEVADA COMMUNICATIONS<br>CORPORATION,<br>a Delaware corporation,<br>and NORMAN R. DOBIESZ,<br>MAUREEN DONOVAN DOBIESZ,<br>STUART M. LOPATA and<br>SAMUEL A. GRECO, as individuals | ) |
| | ) |
| Counterdefendants. | ) |

## COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST SET OF DOCUMENT REQUESTS UPON NEVADA COMMUNICATIONS CORPORATION

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Counterdefendant Nevada Communications Corporation, a Delaware corporation. ("NCC")

produce the documents requested herein for inspection and copying within 30 days of the service

hereof at the offices of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A  501 E. Kennedy

Blvd. Suite 1200. Tampa, FL 33601, or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

A.    As used herein, the term "NCC" shall mean Nevada Communications

Corporation, a Delaware corporation, its attorneys, agents, consultants, subsidiaries, parents,

divisions, branches, departments, affiliates, related entities, officers, directors and employees

acting within the scope of their authority and all other persons acting or purporting to act on

behalf of any of the foregoing.

B.    As used herein, the term "FSS" shall mean Florida Software Systems, Inc.,

its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

C.    As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its

attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates,

related entities, officers, directors and employees acting within the scope of their authority and all

other persons acting or purporting to act on behalf of any of the foregoing.

D.    As used herein, the term "Nevada-Florida" shall mean Nevada

Communications Corporation, a Florida corporation, its attorneys, agents, consultants,

subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors

and employees acting within the scope of their authority and all other persons acting or purporting

to act on behalf of any of the foregoing.

2

E.      As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

F      As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare Corporation.

G.      As used herein, the terms "you" and "your" shall mean NCC.

H.      The word "document(s)" shall mean any and all written, printed, typewritten, photographic, recorded or graphic materials, however produced or reproduced, which relate or pertain in any way to the subject matter to which the interrogatories refer, such document(s) to include, without limitation, all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

I.      The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa. The present tense shall be read to include the past tense, and vice versa.

J.      As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

K.      As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

L.      The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

M.      The words "and" "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

N.      For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of

your assertion or such privilege or protection; and (c) identify the allegedly applicable privilege or

protection.

**REQUEST NO. 1**

        All documents referring or relating to RDI or furnished to you by RDI.

**REQUEST NO. 2**

        All documents referring or relating to FSS or furnished to you by FSS.

**REQUEST NO. 3**

        All documents referring or relating to Norman Dobiesz, or furnished to you by

Norman Dobiesz, including but not limited to:

    a.      that individual's ownership of either NCC or Nevada-Florida;

    b.      that individual's capital contributions to either NCC or Nevada-Florida;

    c.      that individual's positions as either an officer or employee of either NCC or Nevada-Florida;

    d.      that individual's performance of any activities for or on behalf of either NCC or Nevada-Florida;

    e.      that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either NCC or Nevada-Florida; and

    f.      any communications either to or from that individual.

**REQUEST NO. 4**

        All documents referring or relating to Maureen Donovan Dobiesz, or furnished to

you by Maureen Donovan Dobiesz, including but not limited to:

    a.      that individual's ownership of either NCC or Nevada-Florida;

    b.      that individual's capital contributions to either NCC or Nevada-Florida;

    c.      that individual's positions as either an officer or employee of either NCC or Nevada-Florida;

    d.      that individual's performance of any activities for or on behalf of either NCC or Nevada-Florida,

    e.      receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either NCC or Nevada-Florida; and

    f.      any communications either to or from that individual.

## REQUEST NO. 5

All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including but not limited to:

    a.      that individual's ownership of either NCC or Nevada-Florida;

    b.      that individual's capital contributions to either NCC or Nevada-Florida;

    c.      that individual's positions as either an officer or employee of either NCC or Nevada-Florida;

    d.      that individual's performance of any activities for or on behalf of either NCC or Nevada-Florida;

    e.      that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either NCC or Nevada-Florida; and

    f.      any communications either to or from that individual.

## REQUEST NO. 6

All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including but not limited to:

    a.      any communications either to or from that individual; and

    b.      that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either NCC or Nevada-Florida.

## REQUEST NO. 7

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia,

including but not limited to any gifts, payments or money received by NCC in connection with such services.

## REQUEST NO. 8

All documents referring or relating to Columbia or any faciliaites owned or operated by Columbia, or furnished to you by Columbia or any facilities owned or operated by Columbia.

## REQUEST NO. 9

All documents referring or relating to the Columbia Telecommunications Network, or furnished to you by Columbia Telecommunications Network.

## REQUEST NO. 10

All documents referring or relating to Visioncomm, Inc., or furnished to you by Visioncomm, Inc.

## REQUEST NO. 11

All documents referring or relating to Pay Phones of America, Inc., or furnished to you by Pay Phones of America, Inc.

## REQUEST NO. 12

All documents referring or relating to Matthew Veal, or furnished to you by Matthew Veal.

## REQUEST NO. 13

All documents referring or relating to Teltronics, or furnished to you by Teltronics.

## REQUEST NO. 14

All documents referring or relating to Nevada-Florida, or furnished to you by Nevada-Florida.

**REQUEST NO. 15**

All documents referring or relating to ComCentral Corporation, or furnished to you by ComCentral Corporation.

**REQUEST NO. 16**

All documents referring or relating to ComCentral Acquisition Co., or furnished to you by ComCentral Acquisition Co.

**REQUEST NO. 17**

All documents referring or relating to KL Communications Corp., or furnished to you by KL Communications Corp.

**REQUEST NO. 18**

All documents referring or relating to Michael Zambouros, or furnished to you by Michael Zambouros.

**REQUEST NO. 19**

All documents referring or relating to Medical Cash Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 20**

All documents referring or relating to Medical Funding Corp., or furnished to you by Medical Funding Corp.

**REQUEST NO. 21**

All documents referring or relating to Medical Prefunding Inc., or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 22**

All documents referring or relating to Advantage Medical Inc , or furnished to you by Advantage Medical Inc.

**REQUEST NO. 23**

All documents referring or relating to Miranda Design Associates, Inc., or furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 24**

All documents referring or relating to MedTel Services, Inc., or furnished to you by MedTel Services, Inc.

**REQUEST NO. 25**

All financial records of any kind including, but not limited to, all NCC financial statements, income statements, statements of cash flow, tax returns, accounts payable and receivable, accounting records, balance sheets, general ledgers and bank account records from the past ten (10) years.

**REQUEST NO. 26**

All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either Norman Dobiesz, Maureen Donovan Dobiesz, Stuart Lopata, Samuel A. Greco or Eric Julian.

Dated: March ___, 1999

Respectfully submitted,

_____

One of the Attorneys for Defendant,
Columbia/HCA Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida 33601
Phone: 813/228-7411
Fax: 813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Phone: 312/876-7700
Fax: 312/993-9767

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Nevada Communications Corporation to be served this

_____ day of March, 1999 upon:

John N. Blair
Blair & Roach
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Counsel for Florida Software Systems, Receivable Dynamics, Inc.,
Nevada Communications Corporation, Norman R. Dobiesz,
Maureen Donovan Dobiesz and Stuart M Lopata
(By Mail)

Marion Hale
Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
911 Chestnut Street, P.O. 1368
Clearwater, FL 33756
(813) 461-1818
Counsel for Florida Software Systems, Receivable Dynamics, Inc.,
Nevada Communications Corporation, Norman R. Dobiesz,
Maureen Donovan Dobiesz and Stuart M. Lopata
(By Hand Delivery)

Gary R. Trombley
Florida Bar No. 165721
Tampa Theatre Building
10th Floor
707 N. Franklin Street
Tampa, FL 33601
(813) 229-7918
Counsel for Samuel A. Greco
(By Hand Delivery)

CH_DOCS\146573.3

11

# Exhibit
# D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation<br><br>    Plaintiff,<br><br>  vs.<br><br>COLUMBIA/HCA<br>HEALTHCARE CORPORATION,<br>a Delaware corporation<br><br>    Defendant,<br><br>COLUMBIA/HCA<br>    Counterplaintiff,<br><br>  vs.<br><br>FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation,<br>RECEIVABLE DYNAMICS INC.,<br>a Florida corporation,<br>NEVADA COMMUNICATIONS<br>CORPORATION,<br>a Delaware corporation,<br>and NORMAN R. DOBIESZ,<br>MAUREEN DONOVAN DOBIESZ,<br>STUART M. LOPATA and<br>SAMUEL A. GRECO, as individuals<br><br>    Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 97-2866-CIV-T-17B<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST SET OF
DOCUMENT REQUESTS UPON NORMAN J. DOBIESZ**

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Counterdefendant Norman R. Dobiesz ("Dobiesz") produce the documents requested herein for inspection and copying within 30 days of the service hereof at the offices of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A. 501 E. Kennedy Blvd. Suite 1200. Tampa, FL 33601, or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

      A.    As used herein, the term "FSS" shall mean Florida Software Systems, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

      B.    As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

      C.    As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

      D.    As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare Corporation.

      E.    As used herein, the terms "you" and "your" shall mean Dobiesz.

      F.    The word "document(s)" shall mean any and all written, printed, typewritten, photographic, recorded or graphic materials, however produced or reproduced, which relate or pertain in any way to the subject matter to which the interrogatories refer, such

document(s) to include, without limitation, all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

      G.     The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa. The present tense shall be read to include the past tense, and vice versa.

      H.     As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

      I.     As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

      J.     The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape,

3

photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

      K.    The words "and" "or", as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

      L.    For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of your assertion or such privilege or protection; and (c) identify the allegedly applicable privilege or protection.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents referring or relating to RDI, or furnished to you by RDI, including but not limited to:

    a.    your ownership of RDI;

    b.    your capital contributions to RDI;

    c.    your position as either an officer or employee of RDI;

    d.    your performance of any activities for or on behalf of RDI; and

    e.    your receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from RDI.

4

**REQUEST NO. 2**

All documents referring or relating to FSS, or furnished to you by FSS, including but not limited to:

  a.  your ownership of FSS;

  b.  your capital contributions to FSS;

  c.  your position as either an officer of employee of FSS;

  d.  your performance of any activities for or on behalf of FSS; and

  e.  your receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS.

**REQUEST NO. 3**

All documents referring or relating to Maureen Donovan Dobiesz, or furnished to you by Maureen Donovan Dobiesz, including but not limited to:

  a.  that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer or any entity or business at which you are or were employed;

  b.  that individual's capital contributions in FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

  c.  that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity of business at which you are or were employed;

  d.  that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed; and

  e.  that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or

in part by you, of which you are or were an officer, or any entity or business at which you are or were employed.

## REQUEST NO. 4

All documents referring or relating to Stuart Lopata, including but not limited to:

a. that individual's ownership of either FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

b. that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

c. that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

d. that individual's performance of any activities for or on behalf of any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

e. that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from you or from FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity of business at which you are or were employed; and

f. any communications either to or from that individual.

## REQUEST NO. 5

All documents referring or relating to Eric Julian, including but not limited to:

a. that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

b. that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business

6

owned in whole or in part by you, of which you are or were an officer, or any entity of business at which you are or were employed;

c.   that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

d.   that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc., any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed;

e.   that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from you or from FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned in whole or in part by you, of which you are or were an officer, or any entity of business at which you are were employed; and

f.   any communications either to or from that individual.

## REQUEST NO. 6

All documents referring or relating to Samuel A. Greco, including but not limited

to

a.   any communications either to or from that individual; and

b.   that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from you or FSS, RDI, Nevada Communications Corporation, NCC, Inc., or from any other entity or business owned, in whole or in part, by you, of which you are or were an officer, or any entity or business at which you were employed.

## REQUEST NO. 7

All documents referring or relating to PICS, the Patient Information

Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or

endeavor relating to the communication of information concerning patients, including but not

limited to:

a.   all contracts or agreements, whether drafts, proposed or executed;

7

b.     all communications either to or from Columbia or any third party;

c.     all invoices, purchase orders, checks or other records concerning any payments to FSS;

d     all bills of lading, delivery tickets or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS;

e.     all invoices, purchase orders, checks or other records concerning any purchases by FSS,

f.     all documents concerning the performance of any activities by FSS;

g.     all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS;

h.     all documents concerning any assets or liabilities of PICS; and

i.     all documents furnished to you by PICS.

## REQUEST NO. 8

All documents referring or relating to Sophisticated Software, Inc., or furnished to you by Sophisticated Software, Inc.

## REQUEST NO. 9

All documents referring or relating to PrimeNet Consulting, Inc., or furnished to you by PrimeNet Consulting, Inc.

## REQUEST NO. 10

All documents referring or relating to PrimeNet Financial Corporation, or furnished to you by PrimeNet Financial Corporation.

## REQUEST NO. 11

All documents referring or relating to any corporation, partnership, joint venture or other entity whose name or identity incorporates the words "PrimeNet" or "Prime Net."

## REQUEST NO. 12

All documents referring or relating to **Financial Trac-Systems, Inc.**, or furnished to you by **Financial Trac-Systems, Inc.**

## REQUEST NO. 13

All documents referring or relating to **PICS Technologies, Inc.**, or furnished to you by **PICS Technologies, Inc.**

## REQUEST NO. 14

All documents referring or relating to **Home Health Plan, Inc.**, or furnished to you by **Home Health Plan, Inc.**

## REQUEST NO. 15

All documents referring or relating to **FSS Development Corp.**, or furnished to you by **FSS Development Corp.**

## REQUEST NO. 16

All documents referring or relating to **International Development Corp.**, or furnished to you by **Internal Development Corp.**

## REQUEST NO. 17

All documents referring or relating to **Innovative Marketing & Advertising, Inc.**, or furnished to you by **Innovative Marketing & Advertising, Inc.**

## REQUEST NO. 18

All documents referring or relating to **IHI Associates, Inc.**, or furnished to you by **IHI Associates, Inc.**

**REQUEST NO. 19**

All documents referring or relating to Nevada Communications Corporation, a Florida corporation, or furnished to you by Nevada Communications Corporation, a Florida corporation.

**REQUEST NO. 20**

All documents referring or relating to Nevada Communications Corporation, a Delaware corporation, or furnished to you by Nevada Communications Corporation, a Delaware corporation.

**REQUEST NO. 21**

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia.

**REQUEST NO. 22**

All documents referring or relating to the Columbia Telecommunications Network, or furnished to you by Columbia Telecommunications Network.

**REQUEST NO. 23**

All documents referring or relating to Visioncomm, Inc. or furnished to you by Visioncomm, Inc.

**REQUEST NO. 24**

All documents referring or relating to Pay Phones of America, Inc., or furnished to you by Pay Phones of America, Inc.

**REQUEST NO. 25**

All documents referring or relating to ComCentral Corporation, or furnished to you by ComCentral Corporation.

10

**REQUEST NO. 26**

All documents referring or relating to KL Communications Corp., or furnished to you by KL Communications Corp.

**REQUEST NO. 27**

All documents referring or relating to Miranda Design Associates, Inc., or furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 28**

All documents referring or relating to MedTel Services, Inc., or furnished to you by MedTel Services, Inc.

**REQUEST NO. 29**

All documents referring or relating to Michael Zambouros, or furnished to you by Michael Zambouros.

**REQUEST NO. 30**

All documents referring or relating to Medical Cash Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 31**

All documents referring or relating to Medical Funding Corp., or furnished to you by Medical Funding Corp.

**REQUEST NO. 32**

All documents referring or relating to Medical Prefunding Inc., or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 33**

        All documents referring or relating to Advantage Medical Inc., or furnished to you by Advantage Medical Inc.

**REQUEST NO. 34**

        All documents referring or relating to David McDivitt including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 35**

        All documents referring or relating to John Wood including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 36**

        All documents referring or relating to the receipt or disbursement of any funds or assets, directly or indirectly, from or to RDI, FSS, Nevada Communications Corporation, NCC, Inc., Columbia or Samuel A. Greco, or any entity owned or controlled, in whole or in part, directly or indirectly, by Samuel A. Greco or of which he was an officer or employee.

**REQUEST NO. 37**

        All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either Norman Dobiesz, Maureen Donovan Dobiesz, Stuart Lopata, Samuel A. Greco or Eric Julian.

**REQUEST NO. 38**

        All documents referring or relating to your income, expenses, assets and liabilities, or those of any account, trust, corporation, partnership or other entity you have owned or controlled, either directly or indirectly, at any time during the past ten (10) years, including but

not limited to financial statements, tax returns, bank account records, balance sheets, general

ledgers and other accounting records.

Dated: March _ _ 1999

Respectfully submitted,

_____
One of the Attorneys for Defendant,
Columbia/HCA Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida 33601
Phone: 813/228-7411
Fax: 813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Phone: 312/876-7700
Fax: 312/993-9767

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Norman R. Dobiesz to be served this ___ day of March,

1999 upon:

> John N. Blair
> Blair & Roach
> 2645 Sheridan Drive
> Tonawanda, NY 14150
> (716) 834-9181
> Counsel for Florida Software Systems, Receivable Dynamics, Inc.,
> Nevada Communications Corporation, Norman R. Dobiesz,
> Maureen Donovan Dobiesz and Stuart M. Lopata
> (By Mail)
>
> Marion Hale
> Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
> 911 Chestnut Street, P.O. 1368
> Clearwater, FL 33756
> (813) 461-1818
> Counsel for Florida Software Systems, Receivable Dynamics, Inc.,
> Nevada Communications Corporation, Norman R. Dobiesz,
> Maureen Donovan Dobiesz and Stuart M. Lopata
> (By Hand Delivery)
>
> Gary R. Trombley
> Florida Bar No. 165721
> Tampa Theatre Building
> 10th Floor
> 707 N. Franklin Street
> Tampa, FL 33601
> (813) 229-7918
> Counsel for Samuel A. Greco
> (By Hand Delivery)

CH_DOCS\146575 4

14

# Exhibit
# E

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation | ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) |
| **vs.** | ) <br> ) |
| COLUMBIA/HCA<br>HEALTHCARE CORPORATION,<br>a Delaware corporation | ) <br> ) <br> ) <br> ) |
| **Defendant,** | ) Case No. 97-2866-CIV-T-17B <br> ) |
| COLUMBIA/HCA | ) |
| **Counterplaintiff,** | ) |
| **vs.** | ) <br> ) |
| FLORIDA SOFTWARE SYSTEMS, INC.,<br>a Florida corporation,<br>RECEIVABLE DYNAMICS INC.,<br>a Florida corporation,<br>NEVADA COMMUNICATIONS<br>CORPORATION,<br>a Delaware corporation,<br>and NORMAN R. DOBIESZ,<br>MAUREEN DONOVAN DOBIESZ,<br>STUART M. LOPATA and<br>SAMUEL A. GRECO, as individuals | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Counterdefendants.** | ) |

## COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST SET OF DOCUMENT REQUESTS UPON MAUREEN DONOVAN DOBIESZ

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Counterdefendant Maureen Donovan Dobiesz ("Donovan") produce the documents requested

herein for inspection and copying within 30 days of the service hereof at the offices of Fowler,

White, Gillen, Boggs, Villareal and Banker, P.A. 501 E. Kennedy Blvd. Suite 1200. Tampa, FL 33601, or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

A.      As used herein, the term "FSS" shall mean Florida Software Systems, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

B.      As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

C.      As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

D.      As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare Corporation.

E.      As used herein, the terms "you" and "your" shall mean Donovan.

F.      The word "document(s)" shall mean any and all written, printed, typewritten, photographic, recorded or graphic materials, however produced or reproduced, which relate or pertain in any way to the subject matter to which the interrogatories refer, such document(s) to include, without limitation, all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes,

2

books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

   G. The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa. The present tense shall be read to include the past tense, and vice versa.

   H. As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

   I. As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

   J. The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone,

teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

        K.      The words "and" "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

        L.      For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of your assertion or such privilege or protection, and (c) identify the allegedly applicable privilege or protection.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

        All documents referring or relating to RDI, or furnished to you by RDI, including but not limited to:

        a.      your ownership of RDI;

        b.      your capital contributions to RDI;

        c.      your position as either an officer or employee of RDI;

        d.      your performance of any activities for RDI; and

        e.      your receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from RDI.

## REQUEST NO. 2

All documents referring or relating to FSS, or furnished to you by FSS, including but not limited to:

     a.     your ownership of FSS;

     b.     your capital contributions to FSS;

     c.     your position as either an officer of employee of FSS;

     d.     your performance of any activities for FSS; and

     e.     your receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS.

## REQUEST NO. 3

All documents referring or relating to **Norman Dobiesz**, or furnished to you by Norman Dobiesz, including but not limited to:

     a.     that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

     b.     that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

     c.     that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

     d.     that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed; and

     e.     that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by

you, of which you are or were an officer, or by which you are or were employed.

## REQUEST NO. 4

All documents referring or relating to Stuart Lopata, or furnished to you by Stuart

Lopata, including but not limited to:

a.    that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

b.    that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

c.    that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

d.    that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

e.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed; and

f.    any communications either to or from that individual.

## REQUEST NO. 5

All documents referring or relating to Eric Julian, or furnished to you by Eric

Julian, including but not limited to:

a.    that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

    b        that individual's capital contributions to FSS, RDI, Nevada
               Communications Corporation, NCC, Inc., or any other entity owned in
               whole or in part by you, of which you are or were an officer, or by which
               you are or were employed;

    c.       that individual's positions as either an officer or employee of FSS, RDI,
               Nevada Communications Corporation, NCC, Inc., or any other entity
               owned in whole or in part by you, of which you are or were an officer, or
               by which you are or were employed;

    d.       that individual's performance of any activities for or on behalf of FSS, RDI,
               Nevada Communications Corporation, NCC, Inc., or any other entity
               owned in whole or in part by you, of which you are or were an officer, or
               by which you are or were employed;

    e.       that individual's receipt of any compensation, gifts, payment or other
               benefit, directly or indirectly, from FSS, RDI, Nevada Communications
               Corporation, NCC, Inc., or any other entity owned in whole or in part by
               you, of which you are or were an officer, or by which you are or were
               employed; and

    f.       any communications either to or from that individual.

## REQUEST NO. 6

All documents referring or relating to Samuel A. Greco, or furnished to you by

Samuel A. Greco, including but not limited to:

    a.       any communications either to or from that individual; and

    b.       that individual's receipt of any compensation, payment or other benefit,
               directly or indirectly, from you or from FSS, RDI, Nevada
               Communications Corporation, NCC, Inc., or any other entity or business
               owned in whole or in part by you, of which you are or were an officer, or
               by which you are or were employed.

## REQUEST NO. 7

All documents referring or relating to PICS, the Patient Information

Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or

endeavor relating to the communication of information concerning patients, including but not

limited to:

a.  all contracts or agreements, whether drafts, proposed or executed;

b   all communications either to or from Columbia or any third party;

c   all invoices, purchase orders, checks or other records concerning any payments to FSS,

d   all bills of lading, delivery tickets or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS;

e.  all invoices, purchase orders, checks or other records concerning any purchases by FSS;

f.  all documents concerning the performance of any activities by FSS;

g.  all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS;

h.  all documents concerning any assets or liabilities of PICS; and

i.  all documents furnished to you by PICS.

## REQUEST NO. 8

All documents referring or relating to Sophisticated Software, Inc., or furnished to you by Sophisticated Software, Inc.

## REQUEST NO. 9

All documents referring or relating to PrimeNet Consulting, Inc., or furnished to you by PrimeNet Consulting, Inc.

## REQUEST NO. 10

All documents referring or relating to PrimeNet Financial Corporation, or furnished to you by PrimeNet Financial Corporation.

## REQUEST NO. 11

All documents referring or relating to any corporation, partnership, joint venture or other entity whose name or identity incorporates the words "PrimeNet" or "Prime Net."

**REQUEST NO. 12**

All documents referring or relating to Financial Trac-Systems, Inc., or furnished to you by Financial Trac Systems, Inc

**REQUEST NO. 13**

All documents referring or relating to PICS Technologies, Inc , or furnished to you by PICS Technologies, Inc.

**REQUEST NO. 14**

All documents referring or relating to Home Health Plan, Inc., or furnished to you by Home Health Plan, Inc.

**REQUEST NO. 15**

All documents referring or relating to FSS Development Corp., or furnished to you by FSS Development Corp.

**REQUEST NO. 16**

All documents referring or relating to International Development Corp., or furnished to you by International Development Corp.

**REQUEST NO. 17**

All documents referring or relating to Innovative Marketing & Advertising, Inc., or furnished to you by Innovative Marketing & Advertising, Inc.

**REQUEST NO. 18**

All documents referring or relating to IHI Associates, Inc., or furnished to you by IHI Associates, Inc.

**REQUEST NO. 19**

All documents referring or relating to Nevada Communications Corporation, a Florida corporation, or furnished to you by Nevada Communications Corporation, a Florida corporation.

**REQUEST NO. 20**

All documents referring or relating to Nevada Communications Corporation, a Delaware corporation, or furnished to you by Nevada Communications Corporation, a Delaware corporation

**REQUEST NO. 21**

All documents referring or relating to ComCentral Corporation, or furnished to you by ComCentral Corporation.

**REQUEST NO. 22**

All documents referring or relating to KL Communications Corp., or furnished to you by KL Communications Corp.

**REQUEST NO. 23**

All documents referring or relating to Miranda Design Associates, Inc., or furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 24**

All documents referring or relating to MedTel Services, Inc., or furnished to you by MedTel Services, Inc.

**REQUEST NO. 25**

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia.

**REQUEST NO. 26**

        All documents referring or relating to the Columbia Telecommunications Network, or furnished to you by Columbia Telecommunications Network.

**REQUEST NO. 27**

        All documents referring or relating to Visioncomm, Inc., or furnished to you by Visioncomm, Inc.

**REQUEST NO. 28**

        All documents referring or relating to **Pay Phones** of America, Inc., or furnished to you by Pay Phones of America, Inc.

**REQUEST NO. 29**

        All documents referring or relating to Michael Zambouros, or furnished to you by Michael Zambouros.

**REQUEST NO. 30**

        All documents referring or relating to Medical Cash Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 31**

        All documents referring or relating to Medical Funding Corp., or furnished to you Medical Funding Corp.

**REQUEST NO. 32**

        All documents referring or relating to Medical Prefunding Inc., or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 33**

        All documents referring or relating to Advantage Medical Inc., or furnished to you by Advantage Medical Inc.

**REQUEST NO. 34**

        All documents referring or relating to your employment at or compensation from any entity controlled, either directly or indirectly, by Norman Dobiesz.

**REQUEST NO. 35**

        All documents referring or relating to the receipt or disbursement of any funds or assets, directly or indirectly, from or to RDI, FSS, Nevada Communications Corporation, NCC, Inc., Columbia or Samuel A. Greco, or any entity owned or controlled, in whole or in part, directly or indirectly, by Samuel A. Greco or of which he was an officer or employee.

**REQUEST NO. 36**

        All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either you, Norman Dobiesz, Stuart Lopata, Samuel A. Greco or Eric Julian.

**REQUEST NO. 37**

        All documents referring or relating to your income, expenses, assets and liabilities, or those of any account, trust, corporation, partnership or other entity you have owned or controlled, either directly or indirectly, at any time during the past ten (10) years, including but not limited to financial statements, tax returns, bank account records, balance sheets, general ledgers and other accounting records.

Dated:  March ⸍ 1999

Respectfully submitted,

_____
One of the Attorneys for Defendant,
Columbia/HCA Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida 33601
Phone:  813/228-7411
Fax:  813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606
Phone:  312/876-7700
Fax:  312/993-9767

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Maureen Donovan Dobiesz to be served this __–day of

March, 1999 upon:

> John N. Blair
> Blair & Roach
> 2645 Sheridan Drive
> Tonawanda, NY 14150
> (716) 834-9181
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Hand)
>
> Marion Hale
> Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
> 911 Chestnut Street, P.O. Box 1368
> Clearwater, FL 33756
> (813) 461-1818
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Hand Delivery)
>
> Gary R. Trombley
> Florida Bar No. 165721
> Tampa Theatre Building, 10th Floor
> 707 N. Franklin Street
> Tampa, FL 33601
> (813) 229-7918
> Counsel for Samuel A. Greco
> (By Hand Delivery)

CH_DOCS\146578.5

# Exhibit
# F

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| FLORIDA SOFTWARE SYSTEMS, INC., a Florida corporation | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| COLUMBIA/HCA HEALTHCARE CORPORATION, a Delaware corporation | ) ) ) ) |
| Defendant, | ) Case No. 97-2866-CIV-T-17B ) |
| COLUMBIA/HCA Counterplaintiff, | ) ) ) |
| vs. | ) ) ) |
| FLORIDA SOFTWARE SYSTEMS, INC., a Florida corporation, RECEIVABLE DYNAMICS INC., a Florida corporation, NEVADA COMMUNICATIONS CORPORATION, a Delaware corporation, and NORMAN R. DOBIESZ, MAUREEN DONOVAN DOBIESZ, STUART M. LOPATA and SAMUEL A. GRECO, as individuals | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Counterdefendants. | ) ) |

## COLUMBIA/HCA HEALTHCARE CORPORATION'S FIRST
## SET OF DOCUMENT REQUESTS UPON STUART M. LOPATA

Pursuant to Federal Rule of Civil Procedure 34, Defendant-Counterplaintiff

Columbia/HCA Healthcare Corporation ("Columbia"), by its attorneys, hereby requests that

Counterdefendant Stuart A. Lopata ("Lopata") produce the documents requested herein for inspection and copying within 30 days of the service hereof at the offices of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A. 501 E. Kennedy Blvd. Suite 1200. Tampa, FL 33601, or such other place as may be agreed upon by counsel.

## DEFINITIONS AND INSTRUCTIONS

A.     As used herein, the term "FSS" shall mean Florida Software Systems, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

B.     As used herein, the term "RDI" shall mean Receivable Dynamics Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

C.     As used herein, the term "SSI" shall mean Sophisticated Software, Inc., its attorneys, agents, consultants, subsidiaries, parents, divisions, branches, departments, affiliates, related entities, officers, directors and employees acting within the scope of their authority and all other persons acting or purporting to act on behalf of any of the foregoing.

D.     As used herein, the term "Columbia" shall mean Columbia/HCA Healthcare Corporation.

E.     As used herein, the terms "you" and "your" shall mean Lopata.

F.     The word "document(s)" shall mean any and all written, printed, typewritten, photographic, recorded or graphic materials, however produced or reproduced, which relate or pertain in any way to the subject matter to which the interrogatories refer, such

document(s) to include, without limitation, all originals, copies and drafts of all notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, invoices, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any person(s) and any other pertinent information set forth in written language or any electronic or magnetic representation thereof, whether or not such document(s) are in your possession, custody or control.

      G.    The disjunctive shall be read to include the conjunctive, and vice versa. The singular shall be read to include the plural, and vice versa. The present tense shall be read to include the past tense, and vice versa.

      H.    As used herein, the term "person" shall mean any natural person, business entity, corporation, partnership, syndicate, joint venture, group, association, and any other form of private or business organization, and also any governmental entity, department, agency, bureau, political subdivision or other form of public organization.

      I.    As used herein, the phrases "refer or relate to" and "referring or relating to" shall mean all information, facts, and/or documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a request is being made.

      J.    The term "communication," as used herein, shall mean the transmission, sending and/or receipt of information of any kind by and/through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape,

photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

   K  The words "and" "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests only information that might be deemed outside their scope by any other construction.

   L.  For each and every document and/or communication for which you assert either attorney-client privilege, work product protection, or some other allegedly applicable privilege, (a) identify the document and/or communication by date, title, nature, author, sender, recipient and/or participant; (b) provide a summary statement of the subject matter of the document and/or communication sufficient in detail to permit a determination of the propriety of your assertion or such privilege or protection; and (c) identify the allegedly applicable privilege or protection.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

   All documents referring or relating to RDI, or furnished to you by RDI, including but not limited to:

   a.  your ownership of RDI;

   b.  your capital contribution to RDI;

   c.  your position as either an officer or employee of RDI;

   d.  your performance of any activities for or on behalf of RDI;

   e.  your receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from RDI;

   f  any and all correspondence between you and RDI; and

g.     any and all documents, including, but not limited to, contracts or letters
       drafted by you or any person under your supervision, on behalf of RDI,
       referring or relating to Columbia.

## REQUEST NO. 2

All documents referring or relating to FSS, or furnished to you by FSS, including

but not limited to:

a.     your ownership of FSS;

b      you capital contribution to FSS;

c.     your position as either an officer or employee of FSS;

d.     your performance of any activities for or on behalf of FSS;

e.     your receipt of any compensation, gifts, payment or other benefit, directly
       or indirectly from FSS;

f.     any and all correspondence between you and FSS; and

g.     any and all documents, including, but not limited to, contracts or letters,
       drafted by you or any person under your supervision, on behalf of FSS,
       referring or relating to Columbia.

## REQUEST NO. 3

All documents referring or relating to Norman Dobiesz, or furnished to you by

Norman Dobiesz, including but not limited to:

a.     that individual's ownership of FSS, RDI, Nevada Communications
       Corporation, NCC, Inc. or any other entity owned in whole or in part by
       you, of which you are or were an officer, or by which you are or were
       employed;

b.     that individual's capital contributions to FSS, RDI, Nevada
       Communications Corporation, NCC, Inc. or any other entity owned in
       whole or in part by you, of which you are or were an officer, or by which
       you are or were employed;

c.     that individual's positions as either an officer or employee of FSS, RDI,
       Nevada Communications Corporation, NCC, Inc. or any other entity
       owned in whole or in part by you, of which you are or were an officer, or
       by which you are or were employed;

    d.    that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or of which you are or were employed;

    e.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed; and

    f.    any communications either to or from that individual.

## REQUEST NO. 4

All documents referring or relating to Maureen Donovan Dobiesz, or furnished to you by Maureen Donovan Dobiesz, including but not limited to:

    a.    that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

    b.    that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

    c.    that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

    d.    that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

    e.    that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed; and

    f.    any communications either to or from that individual.

**REQUEST NO. 5**

        All documents referring or relating to Eric Julian, or furnished to you by Eric

Julian, including but not limited to:

      a      that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

      b.     that individual's capital contributions to FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

      c.     that individual's positions as either an officer or employee of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

      d.     that individual's performance of any activities for or on behalf of FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed;

      e.     that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed; and

      f.     any communications either to or from that individual.

**REQUEST NO. 6**

        All documents referring or relating to Samuel A. Greco, or furnished to you by

Samuel A. Greco, including but not limited to:

      a.     any communications either to or from that individual; and

      b.     that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from FSS, RDI, Nevada Communications Corporation, NCC, Inc. or any other entity owned in whole or in part by you, of which you are or were an officer, or by which you are or were employed.

**REQUEST NO. 7**

All documents referring or relating to Nevada Communications Corporation, a Florida corporation, or furnished to you by Nevada Communications Corporation, a Florida corporation.

**REQUEST NO. 8**

All documents referring or relating to Nevada Communications Corporation, a Delaware corporation, or furnished to you by Nevada Communications Corporation, a Delaware corporation

**REQUEST NO. 9**

All documents referring or relating to PrimeNet Consulting, Inc., or furnished to you by PrimeNet Consulting, Inc.

**REQUEST NO. 10**

All documents referring or relating to PrimeNet Financial Corporation, or furnished by you by PrimeNet Financial Corporation.

**REQUEST NO. 11**

All documents referring or relating to any corporation, partnership, joint venture or other entity whose name or identity incorporates the words "PrimeNet" or "Prime Net."

**REQUEST NO. 12**

All documents referring or relating to the provision of, or any proposal to provide, any telecommunications services for Columbia or any facilities owned or operated by Columbia.

**REQUEST NO. 13**

All documents referring or relating to the Columbia Telecommunications Network. or any documents furnished to you by Columbia Telecommunications Network.

**REQUEST NO. 14**

       All documents referring or relating to Visioncomm, Inc., or furnished to you by

Visioncomm, Inc.

**REQUEST NO. 15**

       All documents referring or relating to Pay Phones of America, Inc., or furnished to

you by Pay Phones of America, Inc.

**REQUEST NO. 16**

       All documents referring or relating to Matthew Veal, or furnished to you by

Matthew Veal

**REQUEST NO. 17**

       All documents referring or relating to KL Communications Corp., or furnished to

you by KL Communications Corp.

**REQUEST NO. 18**

       All documents referring or relating to ComCentral Corporation, or furnished to

you by ComCentral Corporation.

**REQUEST NO. 19**

       All documents referring or relating to Miranda Design Associates, Inc., or

furnished to you by Miranda Design Associates, Inc.

**REQUEST NO. 20**

       All documents referring or relating to MedTel Services, Inc., or furnished to you

by MedTel Services, Inc.

**REQUEST NO. 21**

        All documents referring or relating to **Michael Zambouros**, or furnished to you by Michael Zambouros.

**REQUEST NO. 22**

        All documents referring or relating to **Medical Cash** Flow Systems, or furnished to you by Medical Cash Flow Systems.

**REQUEST NO. 23**

        All documents referring or relating to **Medical Funding** Corp., or furnished to you by Medical Funding Corp.

**REQUEST NO. 24**

        All documents referring or relating to **Medical Prefunding Inc.**, or furnished to you by Medical Prefunding Inc.

**REQUEST NO. 25**

        All documents referring or relating to **Advantage** Medical Inc., or furnished to you by Advantage Medical Inc.

**REQUEST NO. 26**

        All documents referring or relating to PICS, the Patient Information Communication System, **PICS Technologies, Inc.** or **any joint venture**, project agreement or endeavor relating to the **communication of information concerning** patients, or furnished to you by any such entity

**REQUEST NO. 27**

        All documents referring or relating to **Sophisticated** Software, Inc., or furnished to you by Sophisticated Software, Inc.

**REQUEST NO. 28**

      All documents referring or relating to David McDivitt, including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 29**

      All documents referring or relating to John Wood, including but not limited to any contracts, agreements, correspondence, memoranda or work product of any kind.

**REQUEST NO. 30**

      All documents referring or relating to the receipt or disbursement of any funds or assets, directly or indirectly, from or to RDI, FSS, Nevada Communications Corporation, NCC, Inc., Columbia or Samuel A. Greco, or any entity owned or controlled, in whole or in part, directly or indirectly, by Samuel A. Greco or of which he was an officer or employee.

**REQUEST NO. 31**

      All documents containing, referring or relating to any affidavits, declarations, deposition testimony, trial testimony or other written statements of either you, Norman Dobiesz, Maureen Donovan Dobiesz, Samuel A. Greco or Eric Julian.

**REQUEST NO. 32**

      All documents referring or relating to your income, expenses, assets and liabilities, or those of any account, trust, corporation, partnership or other entity you have owned or controlled, either directly or indirectly, at any time during the past ten (10) years, including but not limited to financial statements, tax returns, bank account records, balance sheets, general ledgers and other accounting records.

Dated: March ___, 1999

Respectfully submitted,

_____

**One of the Attorneys for Defendant,**
**Columbia/HCA** Healthcare Corporation

G. Donovan Conwell Jr.
Guillermo Pernas
Fowler, White, Gillen, Boggs,
Villareal and Banker, P.A.
501 East Kennedy Blvd., Suite 1700
P.O. Box 1438
Tampa, Florida 33601
Phone: 813/228-7411
Fax: 813/229-8313

Kevin M. Murphy
Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Phone: 312/876-7700
Fax: 312/993-9767

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Columbia/HCA Healthcare Corporation's

First Set of Document Requests Upon Stuart M. Lopata to be served this ___ day of March, 1999

upon:

> John N. Blair
> Blair & Roach
> 2645 Sheridan Drive
> Tonawanda, NY 14150
> (716) 834-9181
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Mail)
>
> Marion Hale
> Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
> 911 Chestnut Street, P.O. Box 1368
> Clearwater, FL 33756
> (813) 461-1818
> Counsel for Florida Software Systems,
> Receivable Dynamics, Inc.,
> Nevada Communications Corporation,
> Norman R. Dobiesz, Maureen Donovan Dobiesz
> and Stuart M. Lopata
> (By Hand Delivery)
>
> Gary R. Trombley
> Florida Bar No. 165721
> Tampa Theatre Building, 10th Floor
> 707 N. Franklin Street
> Tampa, FL 33601
> (813) 229-7918
> Counsel for Samuel A. Greco
> (By Hand Delivery)

CH_DOCS\146577 4

13

# Exhibit
# G

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

     Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

     Defendant,

COLUMBIA/HCA HEALTHCARE     Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

     Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

     Counterdefendants.

_____/


**FLORIDA SOFTWARE SYSTEMS, INC.'S**
**OBJECTIONS AND RESPONSES TO COLUMBIA/HCA**
**HEALTHCARE CORPORATION'S FIRST SET OF**
**DOCUMENT REQUESTS**

     The plaintiff/counter-defendant, Florida Software

Systems, Inc. (FSS), hereby responds to defendant/counter-

plaintiff's first set of document requests served by

*rec'd 4/15/99*

Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

### GENERAL OBJECTIONS

1. FSS objects to the first set of document requests to the extent that it seeks information and/or documents which are privileged or confidential.

2. FSS further objects to the request that the documents be produced for inspection and copying at the offices of Fowler, White, Gillen, Boggs, Villereal and Banker, P.A., 501 East Kennedy Boulevard, Suite 1200, Tampa, Florida 33601. FSS shall produce copies of responsive, non-privileged/non-confidential documents that are not otherwise subject to the general objections or specific objections, at a date and time mutually agreed to by counsel for the parties at the law offices of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., 915 Chestnut Street, Clearwater, Florida.

### SPECIFIC RESPONSES

1(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(b). The plaintiff/counter-defendant objects to request number 1(b) regarding the request for production of corporate minutes on the grounds that this request seeks documents that are not relevant to the litigation, nor are they reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the

plaintiff/counter-defendant will agree to produce any by-laws and articles of incorporation relating to RDI.

1(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(d).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(e).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(f).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(g).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(h).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(i).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Furthermore, this request seeks

3

documents that are privileged and contain confidential information.

1(j).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

1(k).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(l).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(m).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(n).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(o).    None.

1(p).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(q).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4

1(r).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(s).    None.

1(t).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(u).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Furthermore, this request seeks documents that are privileged and contain confidential information.

1(v).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(w).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(x).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(y).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of

admissible evidence. Furthermore, this request seeks documents that are privileged and contain confidential information. Notwithstanding said objection, the plaintiff/counter-defendant will produce copies of documents relating to RDI experience with Columbia to the extent such documents exist.

2(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(b). Objection. The plaintiff/counter-defendant objects to request number 2(b) regarding the request for production of corporate minutes on the grounds that this request seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the plaintiff/counter-defendant will agree to produce any by-laws and articles of incorporation relating to FSS.

2(c). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(d). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(e). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(f). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

6

reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request seeks documents that are privileged and contain confidential information.

2(g).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(h).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(i).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(j).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(k).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(l).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(m).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(n).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(o).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(p).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(q).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(r).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(s).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(t).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(u).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Furthermore, this request seeks documents that are privileged and contain confidential information.

2(v).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(w).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(x).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(y).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(z).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

9

2(aa).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

2(bb).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

2(cc).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist  and  are  not  privileged  or  contain  confidential information.

2(dd).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist  and  are  not  privileged  or  contain  confidential information.

2(ee).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist  and  are  not  privileged  or  contain  confidential information.

2(ff).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist  and  are  not  privileged  or  contain  confidential information.

2(gg).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

2(hh).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

2(ii).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(jj).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(kk).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(ll).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(mm).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(nn).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(oo).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(pp).   Objection.   The Plaintiff/counter-defendant objects to this request on the grounds that it encompasses documents that contain confidential information.

2(qq).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

11

reasonably calculated to lead to the discovery of admissible evidence.

2(rr). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(ss). Objection. The Plaintiff/counter-defendant objects to this request on the grounds that it encompasses documents that contain confidential information.

2(tt). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(uu). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(vv). Objection. The Plaintiff/counter-defendant objects to this request on the grounds that it encompasses documents that contain confidential information.

2(ww). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(xx). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(yy). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

12

2(zz).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(aaa).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(bbb).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(ccc).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(ddd).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(eee)   FSS believes that the "problems" contained in Columbia's termination letter dated May 4, 1998, were concocted by Columbia to terminate the parties' contracts. There are no such documents.

2(fff).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(ggg).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

13

reasonably calculated to lead to the discovery of admissible evidence.

2(hhh). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(iii). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(b). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(c). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(d). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(e). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

3(f). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant to the

14

litigation nor reasonably calculated to lead to the discovery of admissible evidence.

4(a).    None.

4(b).    None.

4(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(d).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(b).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

6(b).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant to the litigation nor can be reasonably calculated to lead to the discovery of admissible evidence.

6(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

6(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

16

reasonably calculated to lead to the discovery of admissible evidence.

6(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(a).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(b).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(b).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

17

8(d).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(e).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8(g).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(h).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8(i).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

9.   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

11. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

12. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

17. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

18. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

19. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

20. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

21. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

22. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

23. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

24. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

25. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

26. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

28. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

29. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

30. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

31. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

32. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

33. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

34. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

35. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

36. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

37. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

38. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, some of this information

22

is protected by the work product and/or attorney-client privilege.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this 14ᵗʰ day of April, 1999.

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.

By: _Marion Hale_

MARION HALE
Post Office Box 1368
Clearwater, FL  34617
(727) 461-1818
(727) 441-8617
Attorneys for
plaintiff and
counter-defendants
SPN #681924
FBN #441351

JOHN N. BLAIR
BLAIR & ROACH
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for
plaintiff and
Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

23

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601

181801

# Exhibit H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

     Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

     Defendant,

COLUMBIA/HCA HEALTHCARE       Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

     Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

     Counterdefendants.

_____/

## RECEIVABLE DYNAMICS, INC.'S
## OBJECTIONS AND RESPONSES TO COLUMBIA/HCA
## HEALTHCARE CORPORATION'S FIRST SET OF
## DOCUMENT REQUESTS

     The counter-defendant, Receivable Dynamics, Inc. (RDI)

hereby responds to defendant/counter-plaintiff's first set

*rec'd 4/15/99*

of document requests served by Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

## GENERAL OBJECTIONS

1. RDI objects to the first set of document requests to the extent that it seeks information and/or documents which are privileged or confidential.

2. RDI further objects to the request that the documents be produced for inspection and copying at the offices of Fowler, White, Gillen, Boggs, Villereal and Banker, P.A., 501 East Kennedy Boulevard, Suite 1200, Tampa, Florida 33601. RDI shall produce copies of responsive, non-privileged documents that are not otherwise subject to the general objections or specific objections at a date and time mutually agreed to by counsel for the parties at the law offices of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., 915 Chestnut Street, Clearwater, Florida.

## SPECIFIC RESPONSES

1(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(b). The plaintiff/counter-defendant objects to request number 1(b) regarding the request for production of corporate minutes on the grounds that this request seeks documents that are not relevant to the litigation, nor are they reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the

2

plaintiff/counter-defendant will agree to produce any by-laws and articles of incorporation relating to RDI.

1(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(d).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(e).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(g).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(h).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(i).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks

3

documents that are privileged and contain confidential information.

1(j).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Furthermore, this request seeks documents that are privileged and contain confidential information.

1(k).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(l).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(m).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(n).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(o).   None.

1(p).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(q).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(r).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(s).   None.

1(t).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(u).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Furthermore, this request seeks documents that are privileged and contain confidential information.

1(v).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(w).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(x).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(y).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of

admissible evidence.  Notwithstanding said objection, the plaintiff/counter-defendant will produce copies of documents relating to RDI experience with Columbia to the extent such documents exist.

2(a).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(b).  Objection.  The plaintiff/counter-defendant objects to request number 2(b) regarding the request for production of corporate minutes on the grounds that this request seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding this objection, the plaintiff/counter-defendant will agree to produce any by-laws and articles of incorporation relating to FSS.

2(c).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(d).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(e).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(f).  Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks

6

documents that are privileged and contain confidential information.

2(g).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(h).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(i).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(j).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request seeks documents that are privileged and contain confidential information.

2(k).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7

2(l).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(m).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(n).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(o).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(p).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(q).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(r).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(s).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8

2(t).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(u).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Furthermore, this request seeks documents that are privileged and contain confidential information.

2(v).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(w).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(x).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(y).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(z).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(aa).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(bb).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(cc).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(dd).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(ee).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(ff).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist and are not privileged or contain confidential information.

2(gg).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(hh).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(ii).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(jj).    The  plaintiff/counter-defendant  will  produce copies  of  responsive  documents  to  the  extent  such  documents exist.

2(kk).    The  plaintiff/counter-defendant  will  produce copies  of  responsive  documents  to  the  extent  such  documents exist.

2(ll).    The  plaintiff/counter-defendant  will  produce copies  of  responsive  documents  to  the  extent  such  documents exist.

2(mm).    The  plaintiff/counter-defendant  will  produce copies  of  responsive  documents  to  the  extent  such  documents exist.

2(nn).    The  plaintiff/counter-defendant  will  produce copies  of  responsive  documents  to  the  extent  such  documents exist.

2(oo).    Objection.   This  request  is  overbroad,  unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably  calculated  to  lead  to  the  discovery  of admissible  evidence.

2(pp).    Objection.    The  Plaintiff/counter-defendant objects  to  this  request  on  the  grounds  that  it  encompasses documents  that  contain  confidential  information.

2(qq).    Objection.   This  request  is  overbroad,  unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably  calculated  to  lead  to  the  discovery  of admissible  evidence.

2(rr).    Objection.   This  request  is  overbroad,  unduly burdensome  and  seeks  documents  that  are  not  relevant  nor

reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

2(ss).  Objection.   The Plaintiff/counter-defendant objects to this request on the grounds that it encompasses documents that contain confidential information.

2(tt).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(uu).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(vv).  Objection.   The Plaintiff/counter-defendant objects to this request on the grounds that it encompasses documents that contain confidential information.

2(ww).  Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

2(xx).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(yy).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(zz).  The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(aaa). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(bbb). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(ccc). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(ddd). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(eee) FSS believes that the "problems" contained in Columbia's termination letter dated May 4, 1998, were concocted by Columbia to terminate the parties' contracts. There are no such documents.

2(fff). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(ggg). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(hhh).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(iii).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(b).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

3(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

14

4(a).    None.

4(b).    None.

4(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(d).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(b).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

15

5(d).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(e).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(f).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

6(b).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant to the litigation nor can be reasonably calculated to lead to the discovery of admissible evidence.

6(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

6(d).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(e).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

6(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(a).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(b).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(b).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(d).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(e).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead .to the discovery of admissible evidence.

8(g).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

8(h).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8(i).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

9.  Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

11. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

18

reasonably calculated to lead to the discovery of admissible evidence.

12. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

17. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

18. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

19. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

20. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

21. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

22. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

23. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

24. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

25. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

26. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

28. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

29. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

30. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

31. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

32. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

33. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

34. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

35. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

36. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

37. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

38. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request seeks documents that are privileged and contain confidential information.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this _14th_ day of April, 1999.

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.

By: _____
MARION HALE
Post Office Box 1368
Clearwater, FL 34617
(727) 461-1818
(727) 441-8617 fax
Attorneys for
plaintiff and
counter-defendants
SPN #681924
FBN #441351

JOHN N. BLAIR
BLAIR & ROACH
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for
plaintiff and
Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601

# Exhibit
# I

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

     Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

     Defendant,

COLUMBIA/HCA HEALTHCARE       Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

     Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

     Counterdefendants.

_____/

**NEVADA COMMUNICATIONS CORP.'S
OBJECTIONS AND RESPONSES TO COLUMBIA/HCA
HEALTHCARE CORPORATION'S FIRST SET OF
DOCUMENT REQUESTS**

     The counter-defendant, Nevada Communications Corp.

(NCC), hereby responds to defendant/counter-plaintiff's

*rec'd 4/15/99*

first set of document requests served by Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

## GENERAL OBJECTIONS

1. NCC objects to the first set of document requests to the extent that it seeks information and/or documents which are privileged or confidential.

2. NCC counter-defendant further objects to the request that the documents be produced for inspection and copying at the offices of Fowler, White, Gillen, Boggs, Villereal and Banker, P.A., 501 East Kennedy Boulevard, Suite 1200, Tampa, Florida 33601. NCC shall produce copies of responsive, non-privileged documents that are not otherwise subject to the general objections or specific objections at a date and time mutually agreed to by counsel for the parties at the law offices of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., 915 Chestnut Street, Clearwater, Florida.

## SPECIFIC RESPONSES

1. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, counter-defendant will produce copies of responsive documents relating to RDI and Columbia.

2. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of

admissible evidence. Notwithstanding said objection, counter-defendant will produce copies of responsive documents relating to FSS and Columbia.

3(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(b). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(c). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(d). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(e). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(f). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(a). None.

4(b). None.

3

4(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(b).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

4

reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence.

5(e).   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor
reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence

5(f).   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor
reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence.

6(a).   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor
reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence.

6(b).   The plaintiff/counter-defendant will produce
copies of responsive documents to the extent such documents
exist.

7.   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor
reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence.

8.   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor
reasonably   calculated   to   lead   to   the   discovery   of
admissible evidence.

9.   Objection.   This request is overbroad, unduly
burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence.

10. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

11. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

12. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

17.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

18.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

19.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

20.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

21.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

22.   Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor reasonably   calculated   to   lead   to   the   discovery   of admissible evidence.

23. Objection.   This   request   is   overbroad,   unduly burdensome  and  seeks  documents  that  are  not  relevant  nor

reasonably calculated to lead to the discovery of admissible evidence.

24. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

25. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

26. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, some of this information is protected by the work product and/or attorney-client privilege.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this 14 day of April, 1999.

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.

By: _____
MARION HALE
Post Office Box 1368
Clearwater, FL 34617
(727) 461-1818
(727) 441-8617 fax
Attorneys for
plaintiff and
counter-defendants
SPN #681924
FBN #441351

8

2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for
plaintiff and
Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601

181812

# Exhibit
# J

STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

     Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

     Defendant,

COLUMBIA/HCA HEALTHCARE      Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

     Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

     Counterdefendants.

_____/


**NORMAN R. DOBIESZ'S
OBJECTIONS AND RESPONSES TO COLUMBIA/HCA
HEALTHCARE CORPORATION'S FIRST SET OF
<u>DOCUMENT REQUESTS</u>**

     The counter-defendant, Norman R. Dobiesz, hereby
responds to defendant/counter-plaintiff's first set of

document requests served by Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

## GENERAL OBJECTIONS

1. The counter-defendant objects to the first set of document requests to the extent that it seeks information and/or documents which are privileged or confidential.

2. The counter-defendnat further objects to the request that the documents be produced for inspection and copying at the offices of Fowler, White, Gillen, Boggs, Villereal and Banker, P.A., 501 East Kennedy Boulevard, Suite 1200, Tampa, Florida 33601. The counter-defendant shall produce copies of responsive, non-privileged documents that are not otherwise subject to the general objections or specific objections at a date and time mutually agreed to by counsel for the parties at the law offices of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., 915 Chestnut Street, Clearwater, Florida.

## SPECIFIC RESPONSES

1(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(b). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(d).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(b).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(d).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

3

reasonably calculated to lead to the discovery of admissible evidence.

3(a).   None.

3(b).   None.

3(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(b).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

4

reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

4(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

4(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

5(a).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

5(b).   Objection.  This request is overbroad, unduly burdensome  and  seeks  documents  that  are  not  relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

5(c).   The  plaintiff/counter-defendant  will  produce copies of responsive documents to the extent such documents exist.

5(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

5(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably  calculated  to  lead  to  the  discovery  of admissible evidence.

5

5(f).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(a).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(b).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(b).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(d).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(e).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(f).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(g).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7(h).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7(i).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8.   Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

9.   Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

11. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

12. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

17. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

18. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

19. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

20. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

21. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

22. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

23. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

24. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

25. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

26. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

28. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

29. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

30. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

31. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

32. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

33. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

34. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

35. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

36. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

37. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, some of this information is protected by the work product and/or attorney-client privilege.

38. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this 14ᵗʰ day of April, 1999.

JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.

By: _____
MARION HALE
Post Office Box 1368
Clearwater, FL  34617
(727) 461-1818
(727) 441-8617 fax
Attorneys for plaintiff and counter-defendants
SPN #681924
FBN #441351

JOHN N. BLAIR
BLAIR & ROACH
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for plaintiff and Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601
181808

# Exhibit
# K

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

     Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

     Defendant,

COLUMBIA/HCA HEALTHCARE      Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

     Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

     Counterdefendants.

_____/

**MAUREEN DONOVAN DOBIESZ'S
OBJECTIONS AND RESPONSES TO COLUMBIA/HCA
HEALTHCARE CORPORATION'S FIRST SET OF
DOCUMENT REQUESTS**

The plaintiff/counter-defendant, Maureen Donovan

Dobiesz, hereby responds to defendant/counter-plaintiff's

*rec'd 4/12/99*

first set of document requests served by Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

## SPECIFIC RESPONSES

1(a).   None.

1(b).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

1(c).   None.

1(d).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

1(e).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

2(a).   None.

2(b).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

2(c).   None.

2(d).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

2(e).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

3(a).    None.

3(b).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

3(c).    None.

3(d).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

3(e).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

4(a).    None.

3

4(b).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

4(c).    None.

4(d).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

4(e).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

4(f).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

5(a).    None.

5(b).    Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

5(c).    None.

4

5(d).    Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Notwithstanding said objection, no documents exist.

5(e).    Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Notwithstanding said objection, no documents exist.

5(f).    Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Notwithstanding said objection, no documents exist.

6(a).    Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Notwithstanding said objection, no documents exist.

6(b).    None.

7(a).    None.

7(b).    Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.    Notwithstanding said objection, no documents exist.

7(c).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

7(d).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

7(e).   None.

7(f).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

7(g .   None.

7(h .   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

7(i).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

8. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

9. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

10. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

11. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

12. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

13. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of

admissible evidence. Notwithstanding said objection, no documents exist.

14. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

15. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

16. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

17. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

18. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

19.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of
admissible  evidence.    Notwithstanding  said  objection,  no
documents  exist.

20.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of
admissible  evidence.    Notwithstanding  said  objection,  no
documents  exist.

21.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of
admissible  evidence.    Notwithstanding  said  objection,  no
documents  exist.

22.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of
admissible  evidence.    Notwithstanding  said  objection,  no
documents  exist.

23.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of
admissible  evidence.    Notwithstanding  said  objection,  no
documents  exist.

24.  Objection.    This  request  is  overbroad,  unduly
burdensome  and  seeks  documents  that  are  not  relevant  nor
reasonably  calculated  to  lead  to  the  discovery  of

admissible evidence.  Notwithstanding said objection, no documents exist.

25. None.

26. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objection, no documents exist.

27. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objection, no documents exist.

28. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objection, no documents exist.

29. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objection, no documents exist.

30. Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objection, no documents exist.

31. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

32. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

33. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

34. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

35. None.

36. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding said objection, no documents exist.

37. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

38. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection, no documents exist.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this 14 day of April, 1999.

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.

By: _____
MARION HALE
Post Office Box 1368
Clearwater, FL 34617
(727) 461-1818
(727) 441-8617
Attorneys for
plaintiff and
counter-defendants
SPN #681924
FBN #441351

JOHN N. BLAIR
BLAIR & ROACH
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for
plaintiff and
Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601

181809

# Exhibit L

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS, INC.
a Florida corporation,

    Plaintiff,

vs.

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation

    Defendant,

COLUMBIA/HCA HEALTHCARE       Case No. 97-2866-CIV-T-17B
CORPORATION, a Delaware
corporation,

    Counterplaintiff,

vs.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation, RECEIVABLE
DYNAMICS, INC., a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION, a Delaware
corporation, and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and SAMUEL A.
GRECO, as individuals

    Counterdefendants.

_____/

### STUART M. LOPATA'S
### OBJECTIONS AND RESPONSES TO COLUMBIA/HCA
### HEALTHCARE CORPORATION'S FIRST SET OF
### DOCUMENT REQUESTS

The counter-defendant, Stuart M. Lopata, hereby

responds to defendant/counter-plaintiff's first set of

document requests served by Columbia/HCA Healthcare Corporation (Columbia), pursuant to Federal Rule of Civil Procedure 34, as follows:

## GENERAL OBJECTIONS

1. The counter-defendant objects to the first set of document requests to the extent that it seeks information and/or documents which are privileged or confidential.

2. The counter-defendant further objects to the request that the documents be produced for inspection and copying at the offices of Fowler, White, Gillen, Boggs, Villereal and Banker, P.A., 501 East Kennedy Boulevard, Suite 1200, Tampa, Florida 33601. The counter-defendant shall produce copies of responsive, non-privileged documents that are not otherwise subject to the general objections or specific objections at a date and time mutually agreed to by counsel for the parties at the law offices of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., 915 Chestnut Street, Clearwater, Florida.

## SPECIFIC RESPONSES

1(a). The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(b). Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2

1(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

1(d).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(e).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(f).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1(g).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(a).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

2(b).    Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(c).    The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3

2(d).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(e).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(f).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2(g).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(b).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

3(d).   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor

4

reasonably calculated to lead to the discovery of admissible evidence.

3(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(a).   None.

4(b).   None.

4(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

4(d).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(e).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4(f).   Objection.  This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(a).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(b).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(c).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

5(d).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(e).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5(f).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(a).   Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6(b).   The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

7.   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8.   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

9.   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10.   Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

11. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

12. Objection.   This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

17. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

18. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

19. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

20. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

21. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

22. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

23. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

24. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

25. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

26. Objection.    This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

28. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

29. The plaintiff/counter-defendant will produce copies of responsive documents to the extent such documents exist.

30. None.

31. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, some of this information is protected by the work product and/or attorney-client privilege.

32. Objection. This request is overbroad, unduly burdensome and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been served upon the attached service list this _14_ day of April, 1999.

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.

By: _____
MARION HALE
Post Office Box 1368
Clearwater, FL  34617
(727) 461-1818
(727) 441-8617 fax
Attorneys for
plaintiff and
counter-defendants
SPN #681924
FBN #441351

JOHN N. BLAIR
BLAIR & ROACH
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181
Co-counsel for
plaintiff and
Counter-defendants

## SERVICE LIST

G. Donovan Conwell
Fowler, White
501 East Kennedy Blvd.
Suite 1700
Tampa, FL 33601

Kevin M. Murphy
Latham & Watkins
Sears Tower, Ste. 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Latham & Watkins
1001 Pennsylvania Ave. N.W.
Washington, DC 20004-2200

Gary Trombley
Trombley & Hanes
707 No. Franklin St. 10th Floor
Tampa, FL 33601

181815

# Exhibit M

FOWLER, WHITE, GILLEN, BOGGS, VILLAREAL AND BANKER, P. A.

ATTORNEYS AT LAW

TAMPA — ST. PETERSBURG — CLEARWATER

FT. MYERS — TALLAHASSEE

| | | |
|---|---|---|
| CABLE - FOWHITE<br>TELEX 52776 | 501 EAST KENNEDY BLVD.<br>TAMPA, FLORIDA 33602<br><br>POST OFFICE BOX 1438<br>TAMPA, FLORIDA 33601<br><br>(813) 228-7411 | TELECOPIER<br>(813) 229-8313 |

July 28, 1999

**VIA FACSIMILE - 727-441-8617**
Marion Hale, Esq.
Johnson, Blakely, Pope, Bokor, Ruppel &
  Burns, P.A.
911 Chestnut Street
Clearwater, Florida 33756

Re:   Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corporation
      Case No. 97-2866-CIV-T-17B

Dear Marion:

        I am writing to you in an effort to avoid having to file a motion to compel the production of documents responsive to various requests propounded upon the various counter-defendants you represent in the above-referenced matter. Before I endeavor to list the myriad categories for which there have been little or no responsive documents produced, let me first say that it is unacceptable (as Susan Wood of Johnson, Blakely has done) to say that the FSS documents (approximately 18,100 pages) and the FSSA documents (approximately 10,600 pages) were produced by all entities represented by Johnson, Blakely with the exception of Stuart Lopata.  We hereby request that an immediately accounting take place to determine which documents were produced by which entities and that we be informed immediately of the results of that accounting.  It should go without saying that it makes a difference regarding which entity produced which documents.  Also, without such information, it is impossible for the counter-plaintiff to make a determination regarding which entities have complied with the requests propounded upon them and which have not.

        The following is a listing, according to the entity to whom the discovery requests were propounded, of categories for which Columbia has received no responsive documents.

**REQUESTS PROPOUNDED UPON NORMAN J. DOBIESZ**

Marion Hale, Esq.
July 28, 1999
Page 2

1. A.    All documents referring or relating to RDI, or furnished to you by RDI, including, but not limited to, your ownership of RDI.

2. A.    All documents referring or relating to FSS, or furnished to you by FSS, including, but not limited to, your ownership of FSS.

4. A.    All documents referring or relating to Stuart Lopata, including, but not limited to, that individual's ownership of either FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned, in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed.

5. A.    All documents referring or relating to Eric Julian, including, but not limited to, that individual's ownership of FSS, RDI, Nevada Communications Corporation, NCC, Inc., or any other entity or business owned, in whole or in part by you, of which you are or were an officer, or any entity or business at which you are or were employed.

6. B.    All documents referring or relating to Samuel A. Greco, including, but not limited to, that individual's receipt of any compensation, gifts, payments or other benefit, directly or indirectly, from your or FSS, RDI, Nevada Communications Corporation, NCC, Inc., or from any other entity or business owned, in whole or in part by you, of which you are or were an officer, or any entity or business at which you were employed.

7. D.    All documents referring or relating to PICS, the Patient Information Communications Systems, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including, but not limited to, all bills of lading, delivery tickets, or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS.

7. E.    All documents referring or relating to PICS, the Patient Information Communications Systems, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including, but not limited to, all invoices, purchase orders, checks or other records concerning any purchases by FSS.

36.    All documents referring or relating to the receipt or disbursements of any funds or assets, directly or indirectly, from or to RDI, FSS, Nevada Communications Corporation, NCC, Inc., Columbia or Samuel A. Greco or any entity owned or controlled, in whole or in part, directly or indirectly, by Samuel A. Greco or of which he was an officer or employee.

*    Columbia hereby requests that Dobiesz state, for each of the 49 categories to which he objected, whether any documents exist for that category and whether those documents are being withheld pursuant to the objection.

Marion Hale, Esq.
July 28, 1999
Page 3

** Columbia questions the completeness of the response for many of the categories for which some documents were received. For example, a proposed joint venture between Sophisticated Software, Inc., PrimeNet Consulting, Inc., PrimeNet Financial Corporation, and Financial Trac-Systems, Inc. technically is responsive to requests 8-12, that is the only document which was produced regarding all of those entities except for Sophisticated Software.

### REQUESTS PROPOUNDED UPON MAUREEN DONOVAN DOBIESZ

** All requests were either objected to with the additional statement "notwithstanding said objection, no documents exist" or the response was "none".

### REQUESTS PROPOUNDED UPON STUART M. LOPATA

According to Susan Wood of Johnson, Blakely, no documents have yet to be produced by Lopata. Notwithstanding this fact, 43 of the categories of documents requested were objected to by Lopata. When Lopata finally decides to produce documents in this matter, Columbia requests that he delineate which of the propounded requests to which he objected that he is withholding documents based on that objection.

### REQUESTS PROPOUNDED UPON NEVADA COMMUNICATIONS CORPORATION

3. A.    All documents referring or relating to Norman Dobiesz, or furnished to you by Norman Dobiesz, including, but not limited to that individual's ownership of either NCC or Nevada-Florida.

3. C.    All documents referring or relating to Norman Dobiesz, or furnished to you by Norman Dobiesz, including, but not limited to that individual's positions as either an officer or employee of either NCC or Nevada-Florida.

4. C.    All documents referring or relating to Maureen Donovan Dobiesz, or furnished to you by Maureen Donovan Dobiesz, including, but not limited to that individual's positions as either an officer or employee of either NCC or Nevada-Florida.

5. A.    All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including, but not limited to that individual's ownership of either NCC or Nevada-Florida.

5. C.    All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including, but not limited to that individual's positions as either an officer or employee of either NCC or Nevada-Florida.

Marion Hale, Esq.
July 28, 1999
Page 4

6. B.    All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including, but not limited to that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly from either NCC or Nevada-Florida.

*    Columbia hereby requests that Nevada Communications Corp. state, for each of the 32 categories to which it objected, whether any documents exist and whether those documents are being withheld pursuant to the objection.

## REQUESTS PROPOUNDED UPON RECEIVABLE DYNAMICS, INC. (RDI)

1. A.    All documents referring or relating to RDI, including, but not limited to, the formation and incorporation of RDI and its qualification to do business in any jurisdiction outside of its state of incorporation.

1. C.    All documents referring or relating to RDI, including, but not limited to, all documents sufficient to identify its . . . managerial-level employees, their duties and responsibilities and their respective dates of service.

1. E.    All documents referring or relating to RDI, including, but not limited to, all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations.

1. P.    All documents referring or relating to RDI, including, but not limited to, all correspondence or other communications between RDI and any third-party relating to or referencing Columbia or any hospital or other medical facility owned or operated directly or indirectly, wholly or in part, by Columbia.

1. X.    All documents referring or relating to RDI, including, but not limited to, all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including, but not limited to, any contract with Columbia or any hospital or medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia.

2. A.    All documents referring or relating to FSS, including, but not limited to, its qualification to do business in any jurisdiction outside of its state of incorporation.

2. C.    All documents referring or relating to FSS, including, but not limited to, all documents sufficient to identify its . . . managerial-level employees, their duties and responsibilities and their respective dates of service.

Marion Hale, Esq.
July 28, 1999
Page 5

2. E.    All documents referring or relating to FSS, including, but not limited to, all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations.

2. O.    All documents referring or relating to FSS, including, but not limited to, all correspondence or other communications between FSS and any third-party relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia.

2. R.    All documents referring or relating to FSS, including, but not limited to, all correspondence or other communications between FSS and any third-party referencing or relating to Samuel A. Greco.

2. S.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to FSS' allegations of damages in its Amended Complaint filed against Columbia.

2. T.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to the ownership of FSS at anytime, including, but not limited to, any transfer of that ownership.

2. X.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to enrollment, testing and approval to send claims electronically from every payor that electronic claims were sent to for Columbia.

2. Y.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to edit criteria obtained from each payor that claims were sent to.

2. Z.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to communications with payors concerning Columbia claims.

2. BB.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to software and edit testing and approval procedures.

2. CC.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to daily claims transmission procedures and balancing procedures, including check totals, claims counts, turnaround times (claim receipt to transmission controls), etc.

2. DD.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to procedures, including audit trails, to ensure that claims were transmitted with data unaltered, exactly as received.

Marion Hale, Esq.
July 28, 1999
Page 6

2. EE.     All documents referring or relating to FSS, including, but not limited to, one weeks worth of documents, backup tapes, logs, etc. evidencing, referring or relating to the daily routine application of procedures documented in (BB-DD) above applied to each of Columbia's facilities.

2. FF.     All documents referring or relating to FSS, including, but not limited to, for every payor to whom FSS sent Columbia claims, produced documentation sufficient to identify what percent of each payor's claims were transmitted electronically, and the percent of each payor's claims that were transmitted on paper.

2. GG.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to the availability of FSS System and Network Resources.

2. HH.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to policies regarding the qualification and hiring of personnel for training and/or customer support positions.

2. II.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to customer support training programs, including, but not limited to, "train the trainer program", all related training material, records of personnel trained, and evaluation of personnel capabilities after training.

2. JJ.     All documents referring or relating to FSS, including, but not limited to, support call documents, including, but not limited to, daily and monthly volume in total and by individual hospital, average length of support calls, and how many were resolved during the call versus logged (a problem report) for further action.

2. KK.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to support call monitoring, procedures, personnel evaluation procedures, and customer satisfaction monitoring.

2. LL.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to problem reports, including, but not limited to, identity of hospital, date/time reported, nature (e.g., software, edit, etc.) and criticality (e.g., work-around available, dead in the water, etc.) of the problem, action taken and date/time of final resolution.

2. MM.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to customer support staffing models and how monitored.

2. NN.     All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to client training programs, including, but not limited to, copies of training manuals, software user manuals, and any other training related materials used in connection with client training.

Marion Hale, Esq.
July 28, 1999
Page 7

2. TT.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including, but not limited to, any contract with Columbia or any hospital or medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia.

2. UU.   All documents referring or relating to FSS, including, but not limited to, all documents showing the qualifications and experience of FSS in electronic claims processing and claims management as of October, 1995.

2. YY.   All documents referring or relating to FSS, including, but not limited to, all logs of problems with software used by FSS in providing services to Columbia.

2. ZZ.   All documents referring or relating to FSS, including, but not limited to, all documents which you contend support any of your defenses to Columbia's counter-claim or third-party complaint.

2. AAA.   All documents referring or relating to FSS, including, but not limited to, all documents which you contend support your claim that Columbia breached a contract with FSS.

2. HHH.   All documents referring or relating to FSS, including, but not limited to, the contracts between FSS and American Airlines or any other entity regarding training to be provided to Columbia.

2. III.   All documents referring or relating to FSS, including, but not limited to, all documents identifying the qualifications and experience of FSS in providing claims management and claim processing services for each of the third-party payors to whom FSS submitted claims on behalf of Columbia.

3. A.   All documents referring or relating to Norman Dobiesz, or furnished to you by Norman Dobiesz, including, but not limited to, that individual's ownership of either RDI or FSS.

5. A.   All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including, but not limited to, that individual's ownership of either RDI or FSS.

6. A.   All documents referring or relating to Eric Julian, or furnished to you by Eric Julian, including, but not limited to, that individual's ownership of either RDI or FSS.

7. B.   All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including, but not limited to, that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS.

Marion Hale, Esq.
July 28, 1999
Page 8

8. D.      All documents referring or relating to PICS, the Patient Information Communications Systems, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including, but not limited to, all bills of lading, delivery tickets or other shipping records concerning delivery of any equipment or other material by or on behalf of FSS.

8. E.      All documents referring or relating to PICS, the Patient Information Communications Systems, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including, but not limited to, all invoices, purchase orders, checks or other records concerning any purchases by FSS.

8. G.      All documents referring or relating to PICS, the Patient Information Communications Systems, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating to the communication of information concerning patients, including, but not limited to, all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS.

*      Columbia  hereby requests that RDI state,  for each of the 84 categories to which it  objected, whether any documents exist and whether those documents are being withheld pursuant to the objection.

**      Several of the objections are because the documents sought are confidential. Magistrate Wilson has entered a comprehensive protective order in this matter and as such, withholding documents based on an assertion of confidentiality is unjustified.

## REQUESTS PROPOUNDED UPON FLORIDA SOFTWARE SYSTEMS, INC. (FSS)

1. A.      All documents referring or relating to RDI, including, but not limited to, its qualification to do business in any jurisdiction outside of its state of incorporation.

1. E.      All documents referring or relating to RDI, including, but not limited to, all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations.

1. P.      All documents referring or relating to RDI, including, but not limited to, all correspondence or other communications between RDI and any third-party relating to or referencing Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia.

1. X.      All documents referring or relating to RDI, including, but not limited to, all documents referring or relating to any assignment, sale or other transfer or rights or assets, or in any

Marion Hale, Esq.
July 28, 1999
Page 9

other ownership interest from RDI to FSS, including, but not limited to, any contact with Columbia or other hospital or other medical facility owned or operated by directly or indirectly, wholly or in part, by Colombia,

2. A.    All documents referring or relating to FSS, including, but not limited to, its qualification to do business in any jurisdiction outside of its state of incorporation.

2. E.    All documents referring or relating to FSS, including, but not limited to, all governmental permits, licenses, patents, trademarks, copyrights or other governmental authorizations.

2. R.    All documents referring or relating to FSS, including, but not limited to, all correspondence or other communications between FSS and any third-party referencing or relating to Samuel A. Greco.

2. S.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to FSS' allegations of damages in its Amended Complaint filed against Columbia.

2. T.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to the ownership of FSS at anytime, including, but not limited to, any transfer of that ownership.

2. X.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to enrollment, testing and approval to send claims electronically from every payor that electronic claims were sent to for Columbia.

2. Y.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to edit criteria obtained from each payor that claims were sent to.

2. Z.    All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to communications with payors concerning Columbia claims.

2. AA.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to receipt of edit requests from Columbia, research and approval of such requests, programming, testing, and documentation of edit implementation and final client notification.

2. BB.   *All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to software and edit testing and approval procedures.*

Marion Hale, Esq.
July 28, 1999
Page 10

2. GG.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to availability of FSS System and Network Resources.

2. HH.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to policies regarding the qualification and hiring of personnel for training and/or customer support positions.

2. II.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to customer support training program, including, but not limited to, "train the trainer" programs, all related training materials, records of personnel trained, and evaluation of personnel capabilities after training.

2. JJ.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to support calls, including, but not limited to, daily and monthly volume in total and by individual hospital, average length of support calls, and how many were resolved during the call versus logged (a problem report) for further action.

2. KK.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to support call monitoring, procedures, personnel evaluation procedures, and customer satisfaction monitoring.

2. LL.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to all documents referring or relating to problem reports, including, not limited to, identity of hospital, date/time reported, nature (e.g., software, edit, etc.) and criticality (e.g., work-around available, dead in the water, etc.) of the problem, action taken and date/time of final resolution.

2. MM.  All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to customer support staffing models and how monitored.

2. NN.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to client training programs, including, but not limited to, copies of training manuals, software user manuals, and any other training related material used in connection with client training.

2. TT.   All documents referring or relating to FSS, including, but not limited to, all documents referring or relating to any assignment, sale or other transfer of rights or assets, or any other ownership interest from RDI to FSS, including, but not limited to, any contact with Columbia or any hospital or other medical facility owned or operated, directly or indirectly, wholly or in part, by Columbia.

Marion Hale, Esq.
July 28, 1999
Page 11

2. UU.   All documents referring or relating to FSS, including, but not limited to, all documents showing the qualifications and experience of FSS in electronic claims processing and claims management as of October, 1995.

2. YY.   All documents referring or relating to FSS, including, but not limited to, all logs of problems with software used by FSS in providing services to Columbia.

2. ZZ.   All documents referring or relating to FSS, including, but not limited to, all documents which you contend support any of your defenses to Columbia's counter-claim or third-party complaint.

2. AAA.  All documents referring or relating to FSS, including, but not limited to, all documents which you contend support your claim that Columbia breached a contact with FSS.

2. CCC.  All documents referring or relating to FSS, including, but not limited to, FSS' complete file for each of the Columbia facilities at which FSS installed software.

2. HHH.  All documents referring or relating to FSS, including, but not limited to, the contracts between FSS and American Airlines or any other entity regarding training to be provided to Columbia.

2. III.   All documents referring or relating to FSS, including, but not limited to, all documents identifying the qualifications and experience of FSS in providing claims management and claim processing services for each of the third-party payors to whom FSS submitted claims on behalf of Columbia.

3. A.    All documents referring or relating to Norman Dobiesz, including, but not limited to, ownership of either RDI or FSS.

5. A.    All documents referring or relating to Stuart Lopata, or furnished to you by Stuart Lopata, including, but not limited to, ownership of either RDI or FSS.

6. A.    All documents referring or relating to Eric Julian, or furnished to you by Eric Julian, including, but not limited to, ownership of either RDI or FSS.

7. B.    All documents referring or relating to Samuel A. Greco, or furnished to you by Samuel A. Greco, including, but not limited to, that individual's receipt of any compensation, gifts, payment or other benefit, directly or indirectly, from either RDI or FSS.

8. D.    All documents referring or relating to PICS, The Patient Information Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating the communication of information concerning patients, including, but not limited to, all bills of lading,

Marion Hale, Esq.
July 28, 1999
Page 12

delivery tickets or other shipping records concerning the delivery of any equipment or other material by or on behalf of FSS.

     8. E.     All documents referring or relating to PICS, The Patient Information Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating the communication of information concerning patients, including, but not limited to, all invoices, purchase orders, checks or other records concerning any purchases by FSS.

     8. G.     All documents referring or relating to PICS, The Patient Information Communication System, PICS Technologies, Inc. or any joint venture, project, agreement or endeavor relating the communication of information concerning patients, including, but not limited to, all documents concerning the development, utilization, transfer or licensing of any software in connection with PICS.

\*     Columbia hereby requests that FSS state, for each of the eighty-four (84) categories to which it objected, whether any documents exist for that category and whether those documents are being withheld pursuant to the objection.

\*\*     Many of the objections stated by FSS are based on confidentiality.  Magistrate Wilson has entered a comprehensive protective order in this matter and as such, withholding documents based upon an assertion of confidentiality is unjustified.

     Please furnish us, as soon as possible, with the information we have requested.  I have always found it to be preferable, for all parties, to resolve as many discovery disputes as possible prior to involving the Court.  Please contact me so that we may do so.

     Sincerely,

     FOWLER, WHITE, GILLEN, BOGGS,
     VILLAREAL & BANKER, P.A.

     G. Donovan Conwell, Jr.

GDC:gw
cc:  Kevin Murphy, Esq.
     Guillermo Pernas, Esq.

GDC\COLUMBIA\CORRESP\HALE13.WPD

# Exhibit N

JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.

ATTORNEYS AND COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| E. D. ARMSTRONG III | MARION HALE | MICHAEL G. LITTLE | CHARLES A SAMARKOS |
| BRUCE W. BARNES | JAMES W. HUMANN | MICHAEL C. MARKHAM | JOHN A. SCHAEFER |
| JOHN T. BLAKELY | SCOTT C. ILGENFRITZ | STEPHANIE T. MARQUARDT | PHILIP M. SHASTEEN |
| BRUCE H. BOKOR | FRANK R. JAKES | F. WALLACE POPE, JR. | CLAY C SCHUETT |
| GUY M. BURNS | TIMOTHY A. JOHNSON, JR. | ROBERT V. POTTER, JR. | PIERCY J. STAKELUM IV |
| JONATHAN S. COLEMAN | AMANDA C. KAISER | DONALD P. REED | JOAN M VECCHIOLI |
| MICHAEL T. CRONIN | SHARON E. KRICK | DARRYL R. RICHARDS | AMBER F WILLIAMS |
| ROBERT M. DAISLEY | ROGER A. LARSON | PETER A. RIVELLINI | JULIUS J ZSCHAU |
| ELIZABETH J. DANIELS | JOHN R. LAWSON, JR.* | DENNIS G. RUPPEL* | *OF COUNSEL |

PLEASE REPLY TO CLEARWATER

FILE NO. 40083.100003

August 17, 1999

Telecopier

G. Donovan Conwell, Esq.
Fowler, White
P.O. Box 1438
Tampa, FL 33601-1438

Re:    Florida Software Systems, Inc. v. Columbia/HCA

Dear Mr. Conwell:

We have received your letter of July 28, 1999, regarding production of documents.

You are correct only in the fact that plaintiff/third-party counterdefendants (with the exception of Stuart Lopata) have produced over 28,000 pages. In fact, following your paralegal's review on July 28, 1999, another 15 long banker's boxes were produced, all of which have been requested (approximately another 70,000-80,000 pages).

Regarding Mr. Lopata's response to request for production, we have not received his documents; however we anticipate many of these will be duplicative of the documents already produced.

The plaintiff/third-party counterdefendants have produced responsive documents as they were maintained at their offices or as they were maintained in storage. In fact, we have produced the file folders which were labeled and maintained in the ordinary course of business for Receivable Dynamics, Florida Software and Nevada Communications all of which include documents responsive to each of the requests, including those directed to both Norman Dobiesz and Maureen Dobiesz. Furthermore, due to the fact that Columbia's requests repeated themselves in many

CLEARWATER OFFICE
911 CHESTNUT STREET
POST OFFICE BOX 1368
CLEARWATER, FLORIDA  33756-1368
TELEPHONE (727) 461-1818
TELECOPIER (727) 441-8617
BANKRUPTCY TELECOPIER (727) 443-6548

TAMPA OFFICE
100 NORTH TAMPA STREET
SUITE 1800
POST OFFICE BOX 1100
TAMPA, FLORIDA  33602-5145
TELEPHONE (813) 225-2500
TELECOPIER (813) 223-7118

NAPLES OFFICE
975 SIXTH AVE  S
POST OFFICE BOX 1368
NAPLES, FLORIDA 34102
TELEPHONE (941) 435-0035
TELECOPIER (941) 435-9992

JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.
ATTORNEYS AND COUNSELLORS AT LAW

August 17, 1999
Page 2

instances for each of the parties, and a majority of the documents were found to be responsive to many of the numbered requests, it would have been counterproductive to make 6 copies of the same documents.

Regarding the production of documents by Columbia, we are greatly dismayed by both the manner and content.   Columbia has produced approximately 14,000 documents in response to the first request for production and approximately 14,000 in response to subsequent requests.  In fact, we received 300 pages of documents produced as late as two business days prior to the depositions of those witnesses.  Further, the amount of duplication in Columbia's production is absurd, and Columbia's production is not organized by category requested, nor does it appear that the documents were produced as they were maintained in any organization/department sense.

You asked that for each request that was objected to, we identify whether any documents exist and whether they are being withheld pursuant to the objections.  After diligent search, our clients do not believe they have documents relating to the following.  However, the balance of the objections remains standing:

KL Communications (other than some IRS documents)
Medical Cashflow Systems
Medical Funding Corp.
Medical Prefunding, Inc.
Advantage Medical, Inc.


Regarding request nos. 1(u) and 2(u), directed to Florida Software (and the duplicate corresponding requests to Receivable Dynamics), we will be making available tax returns and financial statements that exist from 1991.

Regarding the requests that were objected to solely based on confidentiality, responsive documents have already been, or will be, produced under the terms of the confidentiality agreement.  As prescribed in the written notice, please be reminded that all documents produced by plaintiff and third-party counterdefendants are deemed confidential.

JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.

ATTORNEYS AND COUNSELLORS AT LAW

August 17, 1999
Page 3


     We believe the foregoing accurately addresses the discovery issues raised in your letter.  Should you have any questions relating to the above, I will be happy to discuss them with you.

             Very truly yours,

             Marion Hale

MH/sw
cc:    Mr. Norman Dobiesz
       John Blair, Esq.
187239.v7

# Exhibit
# O

92

1      Q.   Okay.  What kind of data is backed up on the

2  Deck Alpha?

3      A.   Any documents that any person creates and

4  stores on that server.  All incoming transmissions from

5  facilities, all routing files and EDI transactions that

6  are sent to the intermediaries.  All confirmations that

7  are received back from any of those intermediaries.

8  Our audit Sequel database, which is our internal

9  controls that we keep all summary data and other

10  transactions from facilities to the intermediaries.

11  All of our development software.  All of our source

12  codes.  All of our accounting information.  Basically

13  everything that we utilize is backed up from that

14  server.

15      Q.   Okay.  Are intracompany e-mails, intracompany

16  memos backed up on the server?

17      A.   No.

18      Q.   That information is kept on the workstation?

19      A.   It's kept on the exchange server, unless

20  someone saves an e-mail or something to the hard drive

21  or somewhere on the network.

22      Q.   Okay.  Have you made any attempts to see the

23  data besides on the -- on any of the workstations since

24  late 1997?

25      A.   When we were asked to disclose all documents

28

1       Q.   That was your primary file server?

2       A.   Right.

3       Q.   What was the new one used for?

4       A.   It became our primary file server.  It was in

5  preparation for our move to Sarasota, so that we'd have

6  two systems available if there was a problem with the

7  move.  So we basically had redundant systems moved and

8  made the deck alpha from the Clearwater office our back

9  up server.

10      Q.   Okay.  So which one is in use today?

11      A.   Both of them.  The primary is the new deck

12  alpha.

13      Q.   Okay.  Why did you want redundancy?

14      A.   To ensure that there was no interruption in

15  moving our offices from one location to the other.  We

16  wanted to have the system up and running before we shut

17  down the system at the other office, so we thought it

18  more feasible to go ahead and buy another entire

19  system.  And instead of depending upon backups and

20  moving it to another server, we could have them both

21  running at the same time.

22      Q.   Okay.  What was the backup policy for code in

23  1994 when you started?

24      A.   A backup tape for code was produced, I

25  believe, every week and given to Mr. Dobiesz.

ROBERT A. DEMPSTER & ASSOCIATES

29

1        Q.    Where are those kept?

2        A.    I believe they're in the safe at the server

3   room, and also -- I take that back.   Those tapes

4   wouldn't be in the server room.   They would probably be

5   in Mr. Todd Bennett's office, or Mr. Dobiesz still has

6   them.

7        Q.    Okay.   Why did you make backups?

8        A.    In case there was a system failure or a

9   problem with the hard drive.   Anything that would

10  happen, we could always restore the code or production

11  files or anything else.

12       Q.    Okay.   What kind of software was used for --

13  let me back up.

14             In addition to the UB82 and the 92 and the

15  1500 programs, what other application software was on

16  the computer when you started in '94?

17       A.    There was the internal routing system.

18       Q.    Okay.   Any other applications?

19       A.    There would have been Word Perfect and other

20  office applications.

21       Q.    Such as?

22       A.    I believe there was Professional Editor.

23  There was ProComm Plus for Windows.   Whatever

24  accounting software that they were utilizing then.

25  There was Microsoft Professional Basic.   There was

ROBERT A. DEMPSTER & ASSOCIATES

1     Q.   Okay.  And when did you write the others?

2     A.   Intermittently between June of '94 and

3 probably June of '98.

4     Q.   Okay.  Did you comment your code?

5     A.   Some.

6     Q.   Do you follow any guidelines for when to

7 comment?

8     A.   If you could tell me exact guidelines when to

9 comment, I would tell you if I did or didn't.  I would

10 comment when I thought it was necessary for anything to

11 be added to it.

12     Q.   Okay.  Was the code commented when you first

13 saw it?

14     A.   No, it was not.

15     Q.   Did the length of the code increase when you

16 converted to the UB92?

17     A.   Not significantly.

18     Q.   Okay.  Is it significantly bigger today?

19     A.   Yes.

20     Q.   You estimated it at 15,000 when you started.

21 What is it today?

22     A.   I'm guessing 25,000.

23     Q.   When did it significantly change in the

24 conversion to the 92?

25     A.   Edits are an integral part of the code, so

16

1   every time an edit was requested a new version was
2   released, which probably was as often as every two
3   weeks, the amount of code was increase.
4       Q.   So the addition in the lines is primarily the
5   edit?
6       A.   Yes.
7       Q.   Okay.  Have you described to us all of your
8   employment since you have been in college?
9       A.   Yes.
10      Q.   So would it be accurate to say that you did
11  not have any employment history prior to working at
12  Florida Software Systems in the health care industry?
13      A.   Yes.
14      Q.   What was your rate of pay when you started?
15      A.   I believe it was 50,000.
16      Q.   Per?
17      A.   Year.
18      Q.   And then has it increased?
19      A.   Yes, it has.
20      Q.   What is it now?
21      A.   70,000.
22      Q.   And of have you gotten regular increases over
23  the years, or how does that work?
24      A.   I was signed to a employment contract, I
25  believe in early '95, that had three increments of

ROBERT A. DEMPSTER & ASSOCIATES

33

1    application packages are mainly office Quick Books.

2    ProComm Plus, Versions, probably, 3 and 4 for '95.    PC

3    Anywhere, Version 802.    Our backup software, and I

4    think that's probably about it for applications.

5         Q.    What operating system does Deck Alpha use?

6         A.    It's NT for Deck Alpha.    We also have

7    Microsoft Sequel 65.

8         Q.    When was that purchased?

9         A.    Back in, I believe, early '96.

10        Q.    Okay.

11        A.    And we also have Interbase, which is another

12   sequel package from Borland.

13        Q.    Okay.    Have you continued to follow the same

14   backup procedures that you described earlier?

15        A.    No.

16        Q.    When do you change?

17        A.    We changed probably in mid '95.    We started

18   doing a daily backups and rotated weekly backup tapes

19   for a six-week period -- for a four-week period, and

20   then maintained monthly backups which were moved off

21   site.

22        Q.    Okay.    Where are the monthly's kept?

23        A.    In the safe.    Or, when Mr. Dobiesz would come

24   in, he would ask for those so he could take then off

25   site.

34

1      Q.    What is the off site location?

2      A.    At Mr. Dobiesz's house.

3      Q.    Okay.  What media were they kept on?

4      A.    We went through a couple of different

5  meetings for types of tapes that are now kept on DAT

6  tapes.

7            MR. POTTER:  Is that D-A-T?

8            THE WITNESS:  D-A-T.

9  BY MR. KONWELL:

10     Q.    What kind of tapes were they kept on in mid

11  '97?

12     A.    I can't remember the exact version of the

13  tapes they were kept on.  We had different backup

14  units, so the tapes were specifically for the backups

15  we were using.

16     Q.    Okay.  Have you ever had to go back to any of

17  your backups?

18     A.    Yes.

19     Q.    For what kinds of cases?

20     A.    We have had people accidentally delete files,

21  so we've had to go and pull things from backup.  We had

22  requests from facilities for files older than six

23  months.  They wanted a confirmation, so we'd have to

24  pull it off a backup tape.  If we did not have it

25  active on our server.

ROBERT A. DEMPSTER & ASSOCIATES

101

1    and then an additional server that's used for our

2    routing which are not in the server closet.

3         Q.   Okay.  Those were in use in '96?

4         A.   No.

5         Q.   But you have those servers contracted?

6         A.   Yes.

7         Q.   And so you have 30 workstations that are

8    being used with an additional five?

9         A.   (Witness nods head affirmatively.)

10        Q.   And the total number of workstations that you

11   have, do think it's 35?

12        A.   (Witness nods head affirmatively.)

13        Q.   How many were in use in '96?

14        A.   16.

15        Q.   Okay.

16        A.   16 I know were being used then.  The others,

17   I don't know.

18        Q.   Okay.  The backup tapes for the Alpha

19   servers, first of all, am I correct that those are the

20   only servers that you back up?

21        A.   Yes.

22        Q.   The backup tapes for those are kept in

23   Mr. Bennett's office?

24        A.   And in the safe in the server room.

25        Q.   What size is that?

ROBERT A. DEMPSTER & ASSOCIATES

102

1     A.    About 18 inches, 2-foot square cube.

2     Q.    And those go back to '94?

3     A.    Most of the ones that are in the safe are the

4     later tapes.  I think all the older tapes are in

5     Mr. Bennett's office, but I can't be sure.

6     Q.    The older tapes, do they go back to '94?

7     A.    I believe they go back to prior to '94.

8     Q.    Okay.  You said that the DOS program was

9     written in a version of Basic?

10     A.    Yes.

11     Q.    And did that ever change?

12     A.    No.

13     Q.    So you believe that the DOS version of the

14     UB82 and UB92 and 1500 software is written in a version

15     of Basic for all agencies that you have that are on the

16     computer now with backups?

17     A.    Yes.

18     Q.    There's also a Windows version of UB92 and

19     1500; is that correct?

20     A.    Yes.

21     Q.    What's that called?

22     A.    Microsoft Access.

23     Q.    Why was Microsoft Access chosen to run that?

24     A.    I think it was the -- Access was the database

25     engine that we were going to use, and I thought the

ROBERT A. DEMPSTER & ASSOCIATES

94

1    A.    We went -- we didn't actually look on the

2    server.  We went through everybody's e-mail, which was

3    on the Exchange server, to look for any e-mails that

4    had to do with Columbia.

5    Q.    Okay.  Is it the case that most of the data

6    that was either on the server or on Columbia?

7    A.    Most transactional data resides on the server

8    would relate to Columbia.

9    Q.    What kind of data is on there?

10    A.    All of our development data and applications

11    and source codes.

12    Q.    That's on the Alpha server?

13    A.    Yes.

14    Q.    How about on the Exchange server?

15    A.    I have no idea.  It would just be internal

16    stuff related to Columbia.  The one problem with that

17    is once someone leaves our employment, we take them off

18    of the Exchange server, so we wouldn't have anything

19    left on there from employees that left prior to or that

20    have left previously.

21    Q.    Did you make any attempt in '97 or '98 to

22    identify such e-mails for employees who have left since

23    the prior period?

24    A.    '98, No.

25    Q.    '97?

ROBERT A. DEMPSTER & ASSOCIATES

1   of our equipment, migrating us to the Microsoft

2   Exchange products.  He is also a Delphi developer.

3        Q.   Who were the customers of FSS when he

4   started?

5        A.   There was Victoria Hospital, Miami Heart,

6   Kindell, Deering, Englewood Hospital Fawcett, Southwest

7   Regional, and Gulf Coast.  And I believe Medical Park

8   which was part of Deering.

9        Q.   Were those owned by the same company?

10       A.   Yes, they were.

11       Q.   Who was that?

12       A.   Columbia.

13       Q.   When did FSS first obtain a non-Columbia

14   account?

15       A.   I believe early '95.

16       Q.   And who was that?

17       A.   I'm not sure.  The first hospital was the VA

18   hospital in South Carolina and Georgia.  There were

19   five VA hospitals --

20       Q.   Okay.

21       A.   -- that are still our clients.  There were

22   other physician practices that we worked with.

23       Q.   How many?

24       A.   I'm guessing.  Probably 20.

25       Q.   Okay.  And what service did FSS provide to

37

1    the Physician Practices?

2         A.    A billing of 1500 forms.

3         Q.    By January of '96, did you have any -- did

4    FSS have any other non-Columbia clients other than

5    those that you just clarified?

6         A.    I'm not sure when Renewal Rehab started.

7    They were a rehabilitation facility in Tampa.  That's

8    an institution on the UB92 format.

9              MR. POTTER:  I object to that question; lack

10        of foundation.

11             THE WITNESS:  Those are the only ones that I

12        recall.

13   BY MR. CONWELL:

14        Q.    Okay.  And by January of '97, how many --

15   what non-Columbia customers did FSS have other than

16   those you just identified?

17             MR. POTTER:  Objection, lacks; foundation.

18        Calls for this witness to speculate.

19             THE WITNESS:  I don't know of any others.

20   BY MR. CONWELL:

21        Q.    Okay.  Throughout '96 and '97, were you the

22   MAS director at FSS?

23        A.    Yes, sir.

24        Q.    And would -- as the MAS director, would you

25   be in a position to know who the customers were?

ROBERT A. DEMPSTER & ASSOCIATES

35

1          We've had files get corrupted, so we've had

2     to pull them from a server, either a Word Perfect

3     document or something that was open in the time of our

4     afternoon thunderstorms.

5          Q.   Okay.  How would you go about getting these

6     backups if they weren't in the safe?

7          A.   We would either -- I don't know if we ever

8     had to go and request one of our off site backups to

9     come back.  We still had other ones that were kept on

10    site that would maintain material, so ...

11         Q.   In addition to the ones in the safe?

12         A.   Yes.

13         Q.   Where were those kept?

14         A.   Right now they're in Mr. Bennett's office.

15         Q.   Okay.  How far back do they go?

16         A.   I believe the tapes go all the way back to

17    '94.

18         Q.   Okay.  Who's Mr. Bennett?

19         A.   Todd Bennett is a Florida Software employee.

20    He's been with us since I want to say the beginning --

21    he was a consultant in the beginning of '95, and a

22    full-time employee by the end of '95.

23         Q.   Okay.  And what's his job function?

24         A.   He's in product development.  Also is the one

25    that we brought in to do upgrading our servers and all

Exhibit
P

http://ccfcorp.dos.state.fl.us/cgi-bin/compweb....h=CORICHR&Menu=COR&txtSearchString=F95000004969

# Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

**Inquiry by:**
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

[ Search ]    HomePage

```
                CORPORATE DETAIL RECORD SCREEN
   9/03/99                                                  11:08 AM
NUM: F95000004969  ST:DE ACTIVE/FOREIGN PROF  FLD: 10/12/1995
FEI#: 59-3331856
NAME  : NEVADA COMMUNICATIONS CORPORATION
PRINCIPAL: 2150 WHITFIELD INDUSTRIAL WAY            CHANGED: 03/16/99
ADDRESS    STE 100
           SARASOTA, FL 34243 US
MAILING  : P.O BOX 12556                            CHANGED: 07/31/97
ADDRESS    ST PETERSBURG, FL 33733 US
RA NAME  : DOBIESZ, NORMAN R
RA ADDR  : 2150 WHITFIELD INDUSTRIAL WAY            ADDR CHG: 02/10/98
           SARASOTA, FL 34243 US
ANN REP  : (1997) B  07/31/97  (1998) B  02/10/98  (1999) A  03/16/99

Officers

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb....00004969&CorichRefKey=@F@@1@1@1@@@0@0@@FORI@

**Florida Division of Corporations**

**Public Access**

Inquiry by:
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

| Search | HomePage |

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

```
9/03/99                    OFFICER/DIRECTOR DETAIL SCREEN                11:08 AM
          CORP NUMBER: F950000004969  CORP NAME: NEVADA COMMUNICATIONS CORPORATION
TITLE: DP   NAME: DOBIESZ, NORMAN R
                  2150 WHITFIELD INDUSTRIAL WAY
                  SARASOTA, FL 34243
TITLE: ST   NAME: DOBIESZ, MAUREEN
                  2150 WHITFIELD INDUSTRIAL WAY
                  SARASOTA, FL 34243



    ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb......I=COR|CHR&Menu=COR&txtSearchString=P95000057488

1 of 1

**Florida Division of**
**Corporations**
**Public Access**

**Corporate Inquiry Menu:**

Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:

○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

Search      HomePage

```
     9/03/99                           CORPORATE DETAIL RECORD SCREEN                    11:13 AM
NUM: P95000057488 ST:FL ACTIVE/FL PROFIT        FLD: 07/25/1995
FEI#: 59-3329603
NAME    : P.I.C.S. CORP.
PRINCIPAL: 2150 WHITFIELD INDUSTRAIL WAY                  CHANGED: 03/16/99
ADDRESS   STE 100
          SARASOTA, FL 34243 US
MAILING   P.O BOX 12556                                   CHANGED: 07/31/97
ADDRESS   ST PETERSBURG, FL 33733 US
RA NAME : CAPITAL CONNECTION
RA ADDR : 417 E. VIRGINIA STREET, SUITE 1
          TALLAHASSEE, FL 32301 US
ANN REP : (1997) B  07/31/97   (1998) B  02/10/98   (1999) A  03/16/99

Officers

       ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

9/3/99 11:17 AM

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb...0057488&CorichtRelKey=@F@@1@1@1@1@@@0@0@DOMp

# Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

**Search String:**

**Inquiry by:**
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

Search       HomePage

9/03/99                    OFFICER/DIRECTOR DETAIL SCREEN                    11:13 AM

CORP NUMBER: P95000057488   CORP NAME: P.I.C.S. CORP.

TITLE: P      NAME: DOBIESZ, NORMAN
              2150 WHITFIELD INDUSTRIAL WAY
              SARASOTA, FL 34243

TITLE: SVP    NAME: GRECO, SAMUEL A
              2150 WHITFIELD INDUSTRIAL WAY
              SARASOTA, FL 34243

TITLE: ST     NAME: DOBIESZ, MAUREEN
              2150 WHITFIELD INDUSTRIAL WAY
              SARASOTA, FL 34243

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----

Document Image

# Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
- ◯ Corporation / Trademark Name
- ◯ Officer / Registered Agent Name
- ◯ Registered Agent Name
- ◯ Trademark Owner Name
- ◯ FEI Number
- ◯ Document Number
- ◯ Trademark Name

**Search String:**

[    Search    ]    [   HomePage   ]

```
                    CORPORATE DETAIL RECORD SCREEN                    11:14 AM
9/03/99
NUM: P93000052009 ST:FL ACTIVE/FL PROFIT       FLD: 07/19/1993 EFF: 07/16/1993
LAST: NAME CHANGE AMENDMENT                     FLD: 10/12/1995
FEI#: 59-3191697
NAME  : NCC, INC.
NH: 1
PRINCIPAL: 2150 WHITFIELD INDUSTRIAL WAY       CHANGED: 03/16/99
ADDRESS    STE 100
           SARASOTA, FL 34243 US
MAILING    P.O BOX 12556
ADDRESS    ST PETERSBURG, FL 33733 US
RA NAME  : DOBIESZ, NORMAN R                    NAME CHG: 09/29/95
RA ADDR  : 2150 WHITFIELD INDUSTRIAL WAY        ADDR CHG: 02/10/98
           SARASOTA, FL 34243 US
ANN REP  : (1997) B 07/31/97   (1998) B 02/10/98   (1999) A 03/16/99

          Officers    Events    Names

          ----   THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT ----
          Document Image
```

Florida Division of
Corporations
**Public Access**

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

Search String:

Search        HomePage

```
9/03/99              OFFICER/DIRECTOR DETAIL SCREEN                11:15 AM

CORP NUMBER: P93000052009   CORP NAME: NCC, INC.
TITLE: P      NAME: DOBIESZ, NORMAN R
                    2150 WHITFIELD INDUSTRIAL WAY
                    SARASOTA, FL 34243

TITLE: ASAT   NAME: DOBIESZ, MAUREEN D
                    2150 WHITFIELD INDUSTRIAL WAY
                    SARASOTA, FL 34243
```

Events    Names

Document Image

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----

## Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

Search String:

Search        HomePage

```
                              CORPORATE DETAIL RECORD SCREEN
        9/03/99                                                    11:15 AM
NUM: P93000064873 ST:FL ACTIVE/FL PROFIT
LAST: REINSTATEMENT                      FLD: 09/17/1993
FEI#: 06-1390948                         FLD: 09/29/1995
NAME  : PRIME NET CONSULTING, INC.
PRINCIPAL: 2150 WHITFIELD INDUSTRIAL WAY
ADDRESS   SARASOTA, FL 34243 US            CHANGED: 02/10/98
MAILING   PO BOX 12556
ADDRESS   ST PETERSBURG, FL 33733-2556
RA NAME : DOBIESZ, NORMAN R
RA ADDR : 2150 WHITFIELD INDUSTRIAL WAY    NAME CHG: 02/10/98
          SUITE 1                          ADDR CHG: 02/10/98
          SARASOTA, FL 34243 US
ANN REP : (1996) B 05/01/96   (1997) B 07/31/97   (1998) B 02/10/98
```

<u>Officers</u>   <u>Events</u>

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image

http://ecfcorp.dos.state.fl.us/cgi-bin/corpweb...0l00c487)&CorichiRetKey=...

# Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search Key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
- ○ Corporation / Trademark Name
- ○ Officer / Registered Agent Name
- ○ Registered Agent Name
- ○ Trademark Owner Name
- ○ FEI Number
- ○ Document Number
- ○ Trademark Name

**Search String:**

Search        HomePage

```
9/03/99                                                        11:16 AM

                         OFFICER/DIRECTOR DETAIL SCREEN

CORP NUMBER: P93000064873   CORP NAME: PRIME NET CONSULTING, INC.

TITLE: P      NAME: DOBIESZ, NORMAN R.
                    2150 WHITFIELD INDUSTRAIL WAY
                    SARASOTA, FL 34243

TITLE: SVPD   NAME: GRECO, SAMUEL A
                    2150 WHITFIELD INDUSTRIAL WAY
                    SARASOTA, FL 34243

TITLE: ST     NAME: DOBIESZ, MAUREEN D
                    2150 WHITFIELD INDUSTRAIL WAY
                    SARASOTA, FL 34243
```

Events

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb...h=COR1CHR&Menu=COR&xtSearchString=P97000018220

# Florida Division of Corporations

## Public Access

**Corporate Inquiry Menu:**

Please select an inquiry type from the list below, then enter a search key in the search field. Press SEARCH to begin the search.

**Inquiry by:**

○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

| Search | HomePage |

---

```
9/03/99                CORPORATE DETAIL RECORD SCREEN                   11:16 AM
NUM: P97000018220  ST:FL ACTIVE/FL PROFIT
FEI#: 59-3447793                            FLD: 02/26/1997
NAME   : MEDTEL SERVICES, INC.
PRINCIPAL: 2240 WHITFIELD INDUSTRIAL WAY             CHANGED: 03/16/99
ADDRESS    STE 100
           SARASOTA, FL 34243 US
MAILING  : PO BOX 12556                               CHANGED: 03/16/99
ADDRESS    ST PETERSBURG, FL 33733 US
RA NAME  : DOBIESZ, NORMAN R               NAME CHG: 06/18/98
RA ADDR  : 2240 WHITFIELD INDUSTRIAL WAY   ADDR CHG: 06/18/98
           SARASOTA, FL 34243 US

ANN REP :            (1998)  B   04/03/98   (1999) A   03/16/99

Officers

---- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT ----
Document Image
```

9/3/99 11:20 AM

1 of 1

## Florida Division of Corporations
### Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press SEARCH to begin the search.

Inquiry by:
- ○ Corporation / Trademark Name
- ○ Officer / Registered Agent Name
- ○ Registered Agent Name
- ○ Trademark Owner Name
- ○ FEI Number
- ○ Document Number
- ○ Trademark Name

**Search String:**

[ Search ]    HomePage

---

9/03/99                    OFFICER/DIRECTOR DETAIL SCREEN                    11:17 AM

CORP NUMBER: P97000018220   CORP NAME: MEDTEL SERVICES, INC.

TITLE: C    NAME: DOBIESZ, NORMAN R
            2150 WHITFIELD INDUSTRIAL WAY
            SARASOTA, FL 34243

TITLE: ST   NAME: DOBIESZ, MAUREEN D
            2150 WHITFIELD INDUSTRIAL WAY
            SARASOTA, FL 34243

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image

**Florida Division of Corporations**

**Public Access**

**Corporate Inquiry Menu:**

Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:

○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

Search      HomePage

```
9/03/99                    CORPORATE DETAIL RECORD SCREEN                 11:17 AM
NUM: P97000036241 ST:FL ACTIVE/FL PROFIT    FLD: 04/23/1997
FEI#: 65-0802981
NAME   : HOME HEALTH PLAN, INC.
PRINCIPAL: 2150 WHITFIELD INDUSTRIAL WAY          CHANGED: 03/11/99
ADDRESS   SUITE 100
          SARASOTA, FL 34243 US
MAILING  : P. O. BOX 12556                        CHANGED: 02/10/98
ADDRESS    ST PETERSBURG, FL 33733 US
RA NAME  : DOBIESZ, NORMAN                        NAME CHG: 08/17/98
RA ADDR  : 2150 WHITFIELD INDUSTRIAL WAY          ADDR CHG: 08/17/98
           SARASOTA, FL 34243 US
ANN REP  :                (1998) B  02/10/98      (1999) A  03/11/99

                   Officers

    ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb...00036241&CorightRefKey=@J/a@1@1@1@1@0@0@M@0@1x0M1/a

# Florida Division of Corporations
## Public Access

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:

○ Corporation / Trademark Name
○ Officer / Registered Trademark Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

Search                  HomePage

---

9/03/99                        OFFICER/DIRECTOR DETAIL SCREEN                    11:17 AM

CORP NUMBER: P97000036241  CORP NAME: HOME HEALTH PLAN, INC.

TITLE: P   NAME: DOBIES2, NORMAN R
           2150 WHITFIELD INDUSTRIAL WAY
           SARASOTA, FL 34243

TITLE: VP  NAME: ZAMBOUROS, MICHAEL
           2150 WHITFIELD INDUSTRIAL WAY
           SARASOTA, FL 34243

TITLE: ST  NAME: DOBIES2, MAUREEN D
           2150 WHITFIELD INDUSTRIAL WAY
           SARASOTA, FL 34243

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb...h=COR/CHR&Menu=COR&txtSearchString=P97000067054

**Florida Division of Corporations**

**Public Access**

Inquiry by:

○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Corporate Inquiry Menu:**

Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Search String:

Search      HomePage

```
                                    CORPORATE DETAIL RECORD SCREEN
  9/03/99                                                                      11:18 AM
NUM: P97000067054   ST:FL ACTIVE/FL PROFIT
FEI#: 65-0318916                                    FLD: 08/04/1997
NAME : PICS TECHNOLOGIES, INC.
PRINCIPAL: 2150 WHITFIELD INDUSTRAIL WAY            CHANGED: 03/16/99
ADDRESS  STE 100
         SARASOTA, FL 34243 US
MAILING  : P.O. BOX 12556                           CHANGED: 02/10/98
ADDRESS  ST PETERSBURG, FL 33733 US
RA NAME  : CAPITAL CONNECTION, INC.
RA ADDR  : 417 E. VIRGINIA ST. STE. 1
         TALLAHASSEE, FL 32302 US

ANN REP :             (1998) B  02/10/98    (1999) A  03/16/99

Officers

     ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb...0006770754&CorichtReKcy=@@H@@1@1@1@1@1@@@@0@@DOMj@

**Florida Division of Corporations**

**Public Access**

Inquiry by:

○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

Search String:

Search     HomePage

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

```
9/03/99                OFFICER/DIRECTOR DETAIL SCREEN                 11:18 AM

CORP NUMBER: P97000067054   CORP NAME: PICS TECHNOLOGIES, INC.

TITLE: P     NAME: DOBIESZ, NORMAN R
                   2150 WHITFIELD INDUSTRAIL WAY
                   SARASOTA, FL 34243

TITLE: ST    NAME: DOBIESZ, MAUREEN D
                   2150 WHITFIELD INDUSTRAIL WAY
                   SARASOTA, FL 34243


    ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb....rSearch=CORICHR&Menu=COR&txtSearchString=S30843

**Florida Division of Corporations**
**Public Access**

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
○ Corporation / Trademark Name
○ Officer / Registered Agent Name
○ Registered Agent Name
○ Trademark Owner Name
○ FEI Number
○ Document Number
○ Trademark Name

**Search String:**

Search        HomePage

```
                      CORPORATE DETAIL RECORD SCREEN
  9/03/99                                                           11:19 AM
NUM: S30843          ST:FL INACTIVE/FL PROFIT      FLD: 02/11/1991
LAST: ADMIN DISSOLUTION FOR ANNUAL REPORT         FLD: 09/26/1997
FEI#: 65-0285549
NAME   : RECEIVABLE DYNAMICS, INC.
PRINCIPAL: RUBIN ICOT CENTER
ADDRESS  13830 58TH STREET NORTH, SUITE 404        CHANGED: 03/22/94
         CLEARWATER, FL 34620
RA NAME  : DOBIESZ, NORMAN R                       NAME CHG: 09/29/95
RA ADDR  : 739 GALEON DR.                          ADDR CHG: 09/29/95
           TIERRA VERDE, FL 33715 US
ANN REP  : (1994) IN 03/22/94  (1995) IN 09/29/95  (1996) B  05/01/96


    Officers    Events

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

9/3/99 11:22 AM

1 of 1

**Florida Division of Corporations**

**Public Access**

Inquiry by:

○ Corporation / Trademark Name

○ Officer / Registered Agent Name

○ Registered Agent Name

○ Trademark Owner Name

○ FEI Number

○ Document Number

○ Trademark Name

**Search String:**

Search          HomePage

**Corporate Inquiry Menu:**

Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

OFFICER/DIRECTOR DETAIL SCREEN

9/03/99                                          11:19 AM

CORP NUMBER: S30843        CORP NAME: RECEIVABLE DYNAMICS, INC.

TITLE: CEOD        NAME: DOBIESZ, NORMAN R
                          739 GALEON DRIVE
                          ST. PETERSBURG, FL 33715

TITLE: STD        NAME: DOBIESZ, MAUREEN D
                          739 GALEON DRIVE
                          ST. PETERSBURG, FL 33715

Events

Document Image

----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----

**Florida Division of Corporations**
**Public Access**

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
- Corporation / Trademark Name
- Officer / Registered Agent Name
- Registered Agent Name
- Trademark Owner Name
- FEI Number
- Document Number
- Trademark Name

**Search String:**

Search   HomePage

```
                  CORPORATE DETAIL RECORD SCREEN
9/03/99                                                   11:19 AM
NUM: S94310       ST:FL ACTIVE/FL PROFIT
FEI#: 65-0318916                    FLD: 11/14/1991 EFF: 11/08/1991
NAME : FLORIDA SOFTWARE SYSTEMS, INC.
PRINCIPAL: 2150 WHITFIELD INDUSTRIAL WAY
ADDRESS   STE 100                               CHANGED: 03/16/99
          SARASOTA, FL 34243 US
MAILING   P.O. BOX 12556                        CHANGED: 03/16/99
ADDRESS   ST PETERSBURG, FL 33733 US
RA NAME : DOBIESZ, NORMAN R             NAME CHG: 01/27/94
RA ADDR : 2150 WHITFIELD IND WAY        ADDR CHG: 01/27/94
          SARASOTA, FL 34243 US
ANN REP :  (1997) B  08/01/97   (1998) B  02/10/98   (1999) A  03/16/99

Officers

      ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

Corporate Inquiry Menu

http://ccfcorp.dos.state.fl.us/cgi-bin/corpweb....a=S94310&CorichrRefKey=@F@@1@1@1@.@@@@0@@@0@DOMPq

**Florida Division of Corporations**

**Public Access**

**Corporate Inquiry Menu:**
Please select an inquiry type from the list below, then enter a search key in the search field. Press **SEARCH** to begin the search.

Inquiry by:
- ○ Corporation / Trademark Name
- ○ Officer / Registered Agent Name
- ○ Registered Agent Name
- ○ Trademark Owner Name
- ○ FEI Number
- ○ Document Number
- ○ Trademark Name

Search String:

Search      HomePage

```
                          OFFICER/DIRECTOR DETAIL SCREEN
9/03/99                                                          11:20 AM
        CORP NUMBER: S94310     CORP NAME: FLORIDA SOFTWARE SYSTEMS, INC.
TITLE: P    NAME: DOBIESZ, NORMAN R.
                  2150 WHITFIELD IND WAY
                  SARASOTA, FL

TITLE: ST   NAME: DOBIESZ, MAUREEN D
                  2150 WHITFIELD INDUSTRIAL WAY
                  SARASOTA, FL 34243




        ----- THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT -----
Document Image
```

# Exhibit
# Q

## JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.

### ATTORNEYS AND COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| E. D. ARMSTRONG III | MARION HALE | MICHAEL G. LITTLE | CHARLES A. SAMARKOS |
| BRUCE W. BARNES | JAMES W. HUMANN | MICHAEL C. MARKHAM | JOHN A. SCHAEFER |
| JOHN T. BLAKELY | SCOTT C. ILGENFRITZ | STEPHANIE T. MARQUARDT | PHILIP M. SHASTEEN |
| BRUCE H. BOKOR | FRANK R. JAKES | F. WALLACE POPE, JR. | CLAY C. SCHUETT |
| GUY M. BURNS | TIMOTHY A. JOHNSON, JR. | ROBERT V. POTTER, JR. | PIERCY J STAKELUM IV |
| JONATHAN S. COLEMAN | AMANDA C. KAISER | DONALD P. REED | JOAN M. VECCHIOLI |
| MICHAEL T. CRONIN | SHARON E. KRICK | DARRYL R. RICHARDS | AMBER F WILLIAMS |
| ROBERT M DAISLEY | ROGER A. LARSON | PETER A. RIVELLINI | JULIUS J. ZSCHAU |
| ELIZABETH J. DANIELS | JOHN R. LAWSON, JR.* | DENNIS G. RUPPEL* | *OF COUNSEL |

PLEASE REPLY TO CLEARWATER

FILE NO. 40083.100003

August 31, 1999

G. Donovan Conwell, Esq.
Fowler, White
P.O. Box 1438
Tampa, FL  33601-1438

   Re: Florida Software Systems, Inc. v. Columbia/HCA

Dear Donovan:

   This will follow up on our telephone conversation of August 18, in which you requested the production of various documents and things.

   You requested the source code for the Florida Software.  We object to producing the source code for the Florida Software because it is extremely confidential and extremely proprietary.  The source codes also reflect work on the software which has occurred for matters other than Columbia and for matters which have arisen since the termination of the Columbia contract.  It would be extremely burdensome, if even possible, to reproduce the source code as it existed during the time periods in which Columbia and Florida Software were conducting business.

   You requested the backups or the hard drives of all computers which were in use during the time that Columbia and Florida Software were doing business together.  We object to producing those hard drives as they contain non-Columbia matters as well as Columbia matters.  It would be extremely burdensome and expensive to remove or extract that data which pertains to non-Columbia matters.

   You requested the backup of the Exchange server.  It is my understanding that the Exchange server is the one used to process the email to and from Florida Software. However, the Exchange server was not backed up and only contains current files.  Florida Software tells me that any email which reaches the Exchange server would stay there for no longer than approximately 6 months.  Obviously, the contract between Columbia and Florida Software was terminated much longer than 6 months ago.  Accordingly, it is

CLEARWATER OFFICE
911 CHESTNUT STREET
POST OFFICE BOX 1368
CLEARWATER, FLORIDA 33756-1368
TELEPHONE (727) 461-1818
TELECOPIER (727) 441-8617
BANKRUPTCY TELECOPIER (727) 443-6548

TAMPA OFFICE
100 NORTH TAMPA STREET
SUITE 1800
POST OFFICE BOX 1100
TAMPA, FLORIDA 33602-5145
TELEPHONE (813) 225-2500
TELECOPIER (813) 223-7118

NAPLES OFFICE
975 SIXTH AVE S
POST OFFICE BOX 1368
NAPLES, FLORIDA 34102
TELEPHONE (941) 435-0035
TELECOPIER (941) 435-9992

JOHNSON, BLAKELY, POPE, BOKOR, RUPPEL & BURNS, P.A.

ATTORNEYS AND COUNSELLORS AT LAW

G. Donovan Conwell, Esq.
August 31, 1999
Page 2

believed that there is no data on the Exchange server that would apply to Columbia. Accordingly, we object to producing the Exchange server.

You requested copies of all personnel files pertaining to all Florida Software employees. We do not believe that the personnel files of all employees are relevant and recognize that personnel files are frequently considered personal and private by the individuals to whom they pertain. We are agreeing to produce résumés, to the extent they exist, on all installers and trainers. Additionally, we have previously produced annual evaluations, to the extent that they exist.

Finally, you asked for the GroupWise file. I am told by Florida Software that GroupWise is a software system utilized by Columbia HCA Healthcare rather than a software system utilized by Florida Software. Accordingly, Florida Software has no GroupWise file to produce.

Very truly yours,

Robert V. Potter

RVP/bak
cc: John Blair, Esq.
    Mr. Norman Dobiesz
    Michelle Peden, Esq.
    Kevin Murphy, Esq.
187239v13