UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOFTWARE SYSTEMS,
INC., a Florida corporation,

        Plaintiff,

v.

COLUMBIA/HCA
HEALTHCARE CORPORATION,
a Delaware corporation,

        Defendant/Counterplaintiff,

Case No. 97-2866-CIV-T-17B

v.

FLORIDA SOFTWARE SYSTEMS, INC.,
a Florida corporation,
RECEIVABLE DYNAMICS INC.,
a Florida corporation,
NEVADA COMMUNICATIONS
CORPORATION,
a Delaware corporation,
and NORMAN R. DOBIESZ,
MAUREEN DONOVAN DOBIESZ,
STUART M. LOPATA and
SAMUEL A. GRECO, as individuals,

        Counterdefendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT
SAMUEL A. GRECO'S MOTION TO EXTEND DISCOVERY, OR IN THE
ALTERNATIVE, MOTION FOR SEPARATE TRIALS**

Third-Party Defendant Samuel A. Greco ("Greco") submits this memorandum of law in support of his motion to extend discovery, or in the alternative, his motion for separate trials pursuant to Fed. R. Civ. P. 20(b) and

42 (b). Greco was added as a third-party defendant to this litigation almost one full calendar year after its inception, and was not a party when this Court originally entered its Case Management and Scheduling Order on August 27, 1998. The Counterclaim/Third Party Complaint ("Counterclaim") of Defendant/Counterplaintiff Columbia/HCA Healthcare Corporation ("Columbia") has greatly expanded the scope of this litigation. This case began as a breach of contract case regarding the provision of electronic billing services to Columbia, with a rather narrow and circumscribed set of factual allegations. Columbia's Counterclaim has now ballooned this litigation into a sixty page, two-hundred and two paragraph long counter-allegation, including claims against all of the Counterdefendants for violations of federal and state civil RICO, as well as an individual claim against Greco for breach of fiduciary duty. The factual allegations in the Counterclaim now encompass the original contractual dispute between Florida Software Systems, Inc. ("FSS") and Columbia for the provision of electronic billing services, as well as a number of contractual, and proposed contractual relationships, between certain of the Counterdefendants and Columbia relating to telecommunications, the financing of Columbia's receivables and the Patient Information Communication System ("PICS") joint venture.

    Counsel for Greco has done everything within its power to meet the discovery deadline of the original Case Management and Scheduling Order. Greco recognizes that the caseloads of the federal bench in the Middle District of Florida are some of the most congested in the entire nation. However, as noted in the attendant Motion, should Greco not be granted an extension of the

discovery deadline, the inequitable and unjust result would be Columbia being given almost two years to complete discovery in a breach of contract case, compared with eleven and a half months for Greco in a much more expansive and complex RICO case.

The Eleventh Circuit "ascribe[s] to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order." *Jacobs v. Agency Rent-A-Car, Inc.,* 145 F. 3d 1430, 1432 (11th Cir. 1998) (internal citations omitted). Regarding amendment to the pretrial order, the Eleventh Circuit has stated, "If amendment of the pretrial order would result in substantial injustice to the opposing party or inconvenience to the court, the order should be amended only to avoid manifest injustice." *Id.* If the parties do not agree that good cause exists to extend a scheduling order deadline, the court must then determine if good cause exists, and the moving party bears the burden of establishing good cause. *See, Zapata v. IBP, Inc.* 1994 WL 649322 *10 (D. Kan. 1994). The courts have also established four (4) factors to be considered in determining whether to amend or modify a pre-trial order: "(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party." *Rapco, Inc. v. Commissioner of Internal Revenue,* 85 F.3d 950, 953 (2nd Cir. 1996) (citations omitted). The courts have also held, "[p]rejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result." *Id.*

3

Columbia has also filed its own *Motion to Extend the Case Management Order*. It is Greco's belief that FSS will oppose an extension of the previously set discovery deadlines. Greco would submit that a review of the four factors for amendment of a pre-trial order dictate different results for Greco and Columbia. There is simply no argument that Greco has acted in bad faith or been willfully non-compliant in the discovery process. Furthermore, the prejudice to Greco of not being granted the ability to fully and adequately investigate the claims against him is obvious. However, Greco fully appreciates the potential prejudice to FSS should the discovery deadline be extended. As noted, Columbia waited almost sixteen months before requesting the first document from FSS. Columbia then waited until August of 1999 to even begin scheduling its own depositions. Columbia has now taken the position it will not make any further witnesses available for deposition in September, and has, in effect, brought the discovery process to a grinding halt. Greco is confidant Columbia will attempt to blame others for its own negligence and willful misconduct.

That being said, Greco respectfully requests this Court not to punish him for the actions of Columbia. To disallow Greco the opportunity to defend himself from these allegations would constitute a manifest injustice. Greco would submit, however, there is a way for the Court to avoid rewarding Columbia, without severely curtailing Greco's right to defend himself from these absolutely false claims. This Court can bifurcate the claims pursuant to Fed. R. Civ. P. 20 (b) & 42(b). There is absolutely no reason why Columbia could not have completed its discovery for the breach of contract case prior to September 30. Therefore, this

4

Court could separate for trial the original breach of contract claim filed by FSS, and any of the related common law counterclaims, from the remaining RICO, breach of fiduciary duty and other counterclaims. Greco would submit that the chances for settlement of this matter will increase with every step taken by this Court to force Columbia to actually litigate these matters.

"Rule 42(b) vests discretion in the court to order separate trials of claims . . . in furtherance of convenience or to avoid prejudice, or when separate trials will be conductive to expedition and economy." *Reading Industries, Inc. v. Kennecott Copper Corp.,* 61 F.R.D. 662, 664 (S.D.N.Y. 1974). The *Reading* court notes the following five factors the trial court is to consider in applying Rule 42(b): "(1) are the issues sought to be separately tried significantly different from one another? (2) are the issues triable by jury or the court? (3) does the posture of discovery as to the respective issues suggest that they should or should not be tried together? (4) will the separate issues require the testimony of different witnesses and documentary proof? (5) will the party opposing the severance be prejudiced if granted?" *Id.* However, "[i]n deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just and final disposition of the litigation." *In re Innotron Diagnostics,* 800 F. 2d 1077, 1084 (Fed. Cir. 1986). Bifurcating the claims in this case for trial is the best way for the Court to expedite resolution of this litigation, while preserving Greco's right to a just and final disposition of this matter.

5

There is an abundance of case authority allowing for bifurcation of claims, particularly in RICO cases. *See, e.g. Totaltape, Inc. v. National Assoc. of State Boards of Accountancy*, 1987 WL 7736 *9 (S.D.N.Y. 1987) (district court separated original antitrust claim from RICO counterclaim noting, "Severance is appropriate where the claims to be detached present questions of fact and law distinct from the main action such that a single trial would lead to confusion, delay, additional expense, or undue prejudice"); *Duttle v. Bandler & Kass,* 1990 WL 113187 *5,7 (S.D.N.Y. 1990) (RICO claim separated from securities and common law fraud claims, district court agreed with defendants they would be prejudiced in the underlying fraud claims by being referred to as "racketeers", and that it would be a waste of judicial resources to try the RICO claim should the defendants successfully defeat the securities fraud claim); *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (separation of civil rights action under 42 U.S.C. § 1983 ordered, court noted separate trials may be ordered to avoid prejudice, provide for convenience or expedite the proceedings, but that only one of these factors needs to be established for there to be a separate trial); *Xerox Corp. v. Nashua Corp.*, 57 F.R.D. 25, 27 (S.D.N.Y. 1972) (affirmative defense separated from original claim for trial even though both issues were to be decided by a jury, the court noted, "the fact that all are to be tried by the court is not a reason why severance should not occur if other considerations favor separate trials.")

In the case of *Leonard Publishing Corp. v. Future Generations, Inc.*, 1994 WL 163987 (S.D.N.Y. 1994), the district court was presented with a very similar

factual scenario as is present in this case. The plaintiff in that case alleged breach of contract, to which the defendant counterclaimed with allegations of antitrust and RICO violations, along with a number of other common law claims. *Id.* at *1. The court analyzed the allegations pursuant to the five factors for separation of claims enunciated in *Reading Industries Inc*. The court first found that the "legal and factual issues underlying plaintiff's breach of contract claim as well as [defendant's] common law counterclaims differ significantly from those underlying the antitrust and RICO counterclaims." *Id.* at *2. The defendants argued against bifurcation of the RICO and antitrust claims because " . . . the issues it raises in defense of [plaintiff's] contract claims and the breach of contract, common law fraud and tort counterclaims are 'integrally interrelated' and 'virtually the same as the issues presented by the RICO and antitrust counterclaims.'" *Id.* at *3. In response to this argument by the defendant, the court stated, "The interests of judicial economy and the convenience of all parties will be served by trying the less complex claims first, especially where certain necessary elements or claims in the RICO and antitrust counterclaims may be disposed of by the first trial and the more complex claims would involve substantial amounts of evidence which is unnecessary to resolution of the other claims in the case." *Id.* (citations omitted). The court found most compelling the argument that a separate trial would help to streamline the issues in a potential second trial because:

> If [defendant] prevails on any of its affirmative defenses or
> the related counterclaims, those issues – such as fraudulent
> conduct by [plaintiff] – will not be relitigated in the second trial. On
> the other hand, if [defendant] cannot prove any of the related

> counterclaims, then defendant's proof at the second trial will be limited to those elements of the RICO and antitrust counterclaims not covered by the first trial. For example, if [defendant] does not prevail on its fraud counterclaim, then [plaintiff's] alleged fraud cannot provide the bases of the predicate act for the RICO counterclaim.

*Id.* at *4.

In reviewing the other factors to be considered for separation of trials, the *Leonard* court found, first, that even though all of the claims and counterclaims were to be tried by a jury, this did not in and of itself make separation inappropriate. *Id.* Second, the scope of discovery and the witness testimony and documentary evidence necessary for trial would be substantially different for the RICO and antitrust claims. *Id.* Third, the defendant's assertion of prejudice due to the cost of relitigating issues to a second jury the court found unpersuasive. The *Leonard* court found this to be an invalid concern because, "[a]ny common issues of law or fact will be determined in the first trial, will become the law of the case and will be removed from trial on the RICO and antitrust claims." *Id.* The court further noted that what separation of the claims may actually accomplish is to "deny defendant the opportunity to prolong what is essentially a simple litigation and dramatically increase the cost to [plaintiff] of proceeding with its claim – aims which Rule 42(b) was specifically designed to frustrate." *Id.*

The court's reasoning in *Leonard* has direct applicability to this case. Greco would submit Columbia is attempting to do exactly what the defendant's in *Leonard* were attempting to do – prolong an initially simple litigation in order to

8

break the parties financially through the payment of attorney's fees[1]. There is no other reason to explain Columbia waiting sixteen months to even begin showing the slightest interest in participating in discovery, then to turn around and unilaterally terminate the ability of the Counterdefendants to conduct any discovery depositions the last month before the discovery deadline. This Court can remedy this situation by separating the claims for trial. Greco submits that Counts X and XI of the Counterclaim appear to be sufficiently related to FSS's breach of contract and fraud claims, and could be separated from the remaining counterclaims with relative ease. The Court could also consider imposing a stay on discovery for the remaining counterclaims in order to alleviate any potential prejudice to FSS. This would serve the dual goal of preventing Columbia from bleeding the parties dry financially, while forcing Columbia to stand or fall in the breach of contract case. Similarly, an initial trial would help to greatly streamline the issues in a second trial, as a number of predicate acts alleged by Columbia are related to the contracts between Columbia and FSS for the provision of electronic billing services.

## CONCLUSION

Greco respectfully requests this Court to grant him a six-month extension of the discovery deadline in the current Case Management and Scheduling Order until June 30, 2000, to amend the dates for the filing of dispositive motions and expert witness disclosures accordingly, and to increase the number of

---

[1] The Chancery Court in Delaware has ordered that Columbia is responsible for the payment of Greco's attorney's fees in this litigation. However, should Greco not prevail in this litigation, Columbia does have a right of indemnification against Greco for the repayment of the funds forwarded to Greco for attorney's fees.

9

depositions per side to thirty (30). Greco was added as a third-party defendant to this litigation almost one calendar year after its inception. Greco was not a party to this lawsuit when the Case Management and Scheduling Order was entered, and Greco has not requested any previous extensions of the discovery deadline in this matter. Counsel for Greco has done everything within its ability to complete as much discovery as possible, and to date, counsel for Greco has completed the depositions of four of the twenty-two necessary witnesses in this case. Greco submits it would be manifestly unjust to deny him the ability to completely and adequately investigate and defend the claims against him. Recognizing the potential prejudice to FSS should the discovery deadline be extended, Greco would ask, in the alternative, that the original fraud and breach of contract claims brought by FSS, and any of the necessarily related counterclaims, be separated for trial from the RICO and breach of fiduciary duty counterclaims. Greco would also not object to a stay of discovery on the RICO and breach of fiduciary duty counterclaims pending resolution of the initial trial. This case began as a breach of contract case, and that is all that it will ever truly be about.

Dated at Tampa, Florida this 10th day of September, 1999.

TROMBLEY & HANES

By: _D. Michelle Peden_
GARY R. TROMBLEY, FB# 165721
D. MICHELLE PEDEN, FB# 0896853
707 North Franklin Street
Tenth Floor
Tampa, Florida 33602
(813) 229-7918   Fax: (813) 223-5204
Attorneys for Third Party Defendant,
Samuel A. Greco

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following via regular mail on September 9, 1999 to the following:

G. Donovan Conwell
Guillermos Pernas
Fowler, White et al.
501 East Kennedy Boulevard, Suite 1700
Tampa, FL 33601

Kevin M. Murphy/Jennifer P. Kotler
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606

Michael Chertoff
Matthew Martens
Latham & Watkins
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2505

Marion Hale
Johnson, Blakely, Pope, Bokor,
Ruppel & Burns, P.A.
911 Chestnut Street
Clearwater, FL 33757

John Blair
Blair & Roach
2645 Sheridan Drive
Tonawanda, NY 14150

*(signature)*
GARY R. TROMBLEY
D. MICHELLE PEDEN